74 N.J. Super. 466 (1962)
181 A.2d 532
BEATRICE EBERT AND CASIMIR EBERT, HER HUSBAND, PLAINTIFFS,
v.
LEON I. BALTER, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
ALLSTATE INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT, AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1962.
Decided June 1, 1962.
*467 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. John J. Gaffey argued the cause for third-party defendant-appellant (Messrs. Gaffey & Webb, attorneys).
Mr. Steven Wise argued the cause for third-party plaintiff-respondent (Mr. Leo Kaplowitz, attorney).
*468 The opinion of the court was delivered by FOLEY, J.A.D.
Third-party defendant Allstate Insurance Company (Allstate) appeals from a declaratory judgment in favor of Leon I. Balter, defendant and third-party plaintiff, in which it was adjudged by the Union County Court that Allstate is required to defend Balter and to pay any judgment that may be rendered against him in favor of plaintiffs Ebert.
On January 16, 1957 at about 3:00 P.M. Balter was involved in a minor automobile accident with an automobile owned and operated by Mrs. Ebert. No property damage or personal injury was noted at that time and the parties went on their ways without exchanging identification.
January 16 was the terminal date of an automobile liability policy written by Allstate in Balter's favor. The policy contained the customary condition that, "In the event of accident, occurrence or loss, written notice containing all particulars shall be given by or for the insured to Allstate as soon as practicable." Following the expiration of the Allstate policy at midnight January 16, a similar liability policy written by State Farm Mutual Insurance Company (State Farm) in favor of Balter went into effect.
A week or less after the happening of the accident above referred to, Casimir Ebert telephoned Balter at his home, informed him that Mrs. Ebert had been injured in the accident, and requested that he notify his insurance company immediately. Balter, although he was aware that Allstate's coverage terminated on January 16, and State Farm's coverage commenced on January 17, apparently mistakenly associated the occurrence with January 17 and immediately went to the State Farm office and reported to Kenneth Goich, the State Farm agent, that the accident had occurred on January 17, giving him the necessary details concerning it.
A few months later Balter, curious as to the outcome of the claim, inquired of Goich concerning it. Goich told him that he was "an old worry wart, that nothing would come of it, to go home and forget it." Shortly thereafter, at *469 State Farm's request he called at Goich's office and furnished additional data. Later, when he called at the office to pay his half-yearly premium, he asked how the matter was coming along and was told that, "Everything was O.K. Leave it to us."
On December 24, 1958 the present action was instituted by the Eberts, claims of property damage, personal injury suffered by Mrs. Ebert and consequential damages sustained by her husband, being set out therein. Service of the summons and complaint was made on Balter on December 29, 1958 and the following day he delivered the process to State Farm's claim adjuster, one Rutkowsky. The latter said, "Take it easy. This is going to take time. You are going to have to live with this for a while." When Balter told him that he had "contacted" his own attorney Rutkowsky said, "Well, you could if you want to, but it isn't necessary." In due course State Farm filed an answer in Balter's behalf, and the matter was permitted to rest until August 3, 1959.
On that date, at the request of State Farm, Balter called at the office of its attorney William J. Murray, Esq. Then for the first time he was apprised by Mr. Murray that since the accident had occurred on January 16, 1957, and since his insurance policy with State Farm became effective on the following day, the company would not continue further in the defense of the Ebert case, nor would it pay any resulting judgment. In the course of this conference Balter agreed with the attorney that the accident had happened on January 16.
On August 11, 1959 Balter notified Allstate of the occurrence of the accident by telephone, then fixing the date as January 16, 1957. After investigating the claim Allstate, on December 4, 1959, disclaimed liability to Balter because of his noncompliance with the notice provisions of the policy as hereinabove set forth.
Balter's personal attorney then took over the defense of the case and with leave of the court filed a third-party complaint against both Allstate and State Farm. In the *470 first count of this complaint he alleged, in effect, that both companies were given notice "as soon as practicable" under the circumstances herein outlined. The second count, directed against State Farm alone, alleged that the company "was negligent and careless in its investigation and defense of the suit by the plaintiffs in that it did not properly ascertain within a reasonable time the actual date of the accident referred to in the complaint and therefore prejudiced any recourse the defendant-third party plaintiff had to third-party defendant, Allstate Insurance Company, under the terms of this insurance contract."
Subsequently, an amended third-party complaint in the nature of an action for a declaratory judgment was filed, seeking a construction of the policies and a judicial declaration of the third-party plaintiff's rights against the respective companies.
It is noted that the second count of the original third-party complaint expressly alleging the negligence of State Farm is not referred to in the amended complaint. However, paragraphs 4, 5, 6, 7 and 8 of the original third-party complaint are included in the amended complaint by reference. Paragraph 4, charges inter alia, that:
"* * * At no time did the said State Farm Mutual Automobile Insurance Company question the fact that they were properly defending Mr. Balter in this action even though they had numerous indications that there was a possibility of the accident having occurred on January 16, 1956, which would be prior to the date of their coverage."
And paragraph 8 of the original third-party complaint contains the allegation that:
"* * * [Third-party plaintiff's] failure to properly notify the third party defendant, Allstate Insurance Company of the accident and the claim filed thereunder was caused by the State Farm Mutual Automobile Insurance Company accepting full responsibility for investigating and defending the aforesaid suit and any delay in the processing of this matter was caused by the said State Farm Mutual *471 Automobile Insurance Company and was no fault of the defendant-third party plaintiff, Leon I. Balter."
When the case was later pretried it was provided in the pretrial order that:
"Any rights hereby existing in favor of Leon Balter, 3rd Party plaintiff, against State Farm in negligence action are hereby preserved."
The negligence action against State Farm was not adjudicated by the court below, nor does it appear to have been abandoned. Rather, the trial was limited to a determination of whether the notice given to Allstate on August 11, 1959 should be deemed to have been in compliance with the condition in the policy requiring "written notice containing all particulars * * * as soon as practicable." The court so held.
The trial court was plainly in error in finding as a fact that written notice was given to Allstate. The record reveals that the notice given on August 11, 1959 was by telephone, and this fact does not appear to be in dispute. However, this violation of the conditions of the policy was not necessarily fatal to the third-party plaintiff's claim. Ordinarily, policy conditions may be waived by conduct. See Graham v. Security Mutual Life Ins. Co., 72 N.J.L. 298 (E. & A. 1905). Allstate received the oral notification without objection, acted upon it by investigation, and approximately four months later, disclaimed. But the finding (implicit in the final paragraph of the judgment) that the notice was given as soon as practicable was entirely unwarranted. The phrase "as soon as practicable" has uniformly been construed to mean notice with reasonable dispatch, in view of all the circumstances of each particular case. Annotation, 18 A.L.R.2d 443, 448. In this State the requirement is recognized as a condition precedent to coverage by an insurer. Weller v. Atlantic Casualty Ins. Co., 128 N.J.L. 414 (Sup. Ct. 1942). Compliance with this condition is not tested by the presence or absence of prejudice *472 to the insurer but only by whether the condition has been fulfilled by the insured under all the circumstances. Whittle v. Associated Indemnity Corp., 130 N.J.L. 576, 581 (E. & A. 1943).
Appleman's discussion of the general rule governing the circumstances here presented is apposite:
"It is generally held that giving timely notice to the wrong insurer, by mistake, is no excuse for a lack of notice to the company actually involved. And this was held true in one case, even though the company to which notice was mistakenly given made an immediate investigation of the accident, and later turned the results over to the proper insurer. Such a result seems rather harsh under the circumstances, however, because it is difficult to see how the insurer would be prejudiced, if an adequate and prompt investigation was made, in effect, for its benefit. And if there was actually no prejudice, purely technical defenses should not be encouraged." Appleman, Insurance Law and Practice, § 4745, p. 88-89 (1962).
The case referred to by Appleman in support of the majority rule is Ross v. Mayflower Drug Stores, 338 Pa. 211, 12 A.2d 569, 571 (Sup. Ct. 1940), in which it was held that the breach of the duty to give prompt notice "whether or not the company suffers prejudice thereby, releases it from the obligations imposed by the policy." Our courts have adopted the so-called "harsh" rule, and reject the factor of prejudice advanced by Appleman. Miller v. Zurich Gen. Accident and Liability Ins. Co., 36 N.J. Super. 288, 294 (App. Div. 1955); United National Indemnity Co. v. Sangiuliano, 38 N.J. Super. 400, 404 (Law Div. 1955).
The gist of the third-party plaintiff's argument is that since he gave notice of the accident to Allstate as soon as his erroneous impression as to the date of the accident was brought to his attention, he gave notice as soon as was reasonably practicable. It is true, as was said in Weller, supra, that "as soon as practicable" means "within a reasonable time." It is likewise true that determination of what is "as soon as practicable" does not necessarily depend on mere time lapse but must be adjudged in the light of *473 the particular factual situation presented. See Miller, supra, 36 N.J. Super., at p. 295. But this is not to say that a lapse of 31 months between the date of an accident and the giving of notice should be excused where, as here, the failure to give the notice resulted from an inexcusable oversight on the part of the insured.
While, as we have already stated, our law does not require a showing of prejudice by the company, where a condition of a policy has been infracted, the plain purpose of the notice provision is to give the company an opportunity to investigate an accident in which its insured is involved, and if it sees fit to do so to adjust claims arising therefrom, at the earliest possible time. See Weller, supra, 128 N.J.L., at p. 416. To leave the company at the mercy of a determination that "as soon as practicable" is to be measured by what seemed reasonable to the assured, in circumstances initiated by his own inadvertence would emasculate the very purpose of the notice condition. Although it may be that the quiescence of State Farm contributed materially, or may even be said to have been the moving and efficient cause of the assured's failure to give Allstate timely notice, this of itself cannot be regarded as an extenuating circumstance affecting in any way the mutual obligations of Balter and Allstate under the latter's policy. The simple fact is that Balter, whose memory of the date of the accident should have been fresh and exact when he gave State Farm the January 17 date only a few days later, personally initiated the mistake from which flowed much of what followed.
In concluding, we observe that a fundamental purpose of our judicial system is to dispose of all controversies between parties by a single judicial determination wherever possible. Cf. Ajamian v. Schlanger, 14 N.J. 483 (1954), cert. denied 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954); Massari v. Einsiedler, 6 N.J. 303 (1951). Consequently, there should have been an adjudication, voluntary or involuntary, of the amended third-party complaint with *474 respect to the cause of action based upon the alleged negligence of State Farm. Nevertheless, we do not intend that this expression shall prevent Balter from pursuing any rights he may have against State Farm by reason of the present state of the pleadings. This question is not before us and we, therefore, express no opinion of Balter's procedural or substantive rights with respect thereto, nor of the merits of State Farm's defense to this claim.
Reversed with the direction that judgment be entered in favor of Allstate.