79 N.J. Super. 493 (1963)
192 A.2d 169
UNITED STATES CASUALTY COMPANY, PLAINTIFF-APPELLANT,
v.
HOME INSURANCE COMPANY, A CORPORATION, ROGER REICH, JANE ADERENTE, JOSEPH P. ADERENTE AND JOHN BRUNO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1963.
Decided June 17, 1963.
*495 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Seymour Margulies argued the cause for United States Casualty Company (Messrs. Levy, Lemken & Margulies, attorneys).
Mr. Robert C. Gruhin argued the cause for Home Insurance Company and John Bruno.
Mr. James A. McTague, Jr. argued the cause for Roger Reich (Messrs. Krieger and Chodash, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
In this declaratory judgment action the Chancery Division entered judgment that plaintiff is obligated "to defend a certain Civil Action instituted by Roger Reich [hereafter Reich] against Jane Aderente [hereafter Jane]," and to pay any judgment recovered therein by Reich. Plaintiff appeals. The judgment also exonerates Home Insurance Company (Home) from liability, but neither Reich nor Jane appeals.
There is little or no dispute as to the facts. Plaintiff's automobile liability policy was issued to Jane's father, but it covered "any relative" operating a non-owned automobile "provided the actual use thereof is with the permission of the owner." On September 26, 1959, while operating the automobile of one Bruno, she collided with Reich's car. Home insured Bruno, but its policy contained the usual omnibus clause *496 which extends coverage only to persons using the automobile "with the permission of the named insured." Bruno claimed that he had loaned the car to one Meisch, and not to Jane, and that he did not know Jane.
Plaintiff's policy provided:
"In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. * * *"
Jane gave no notice of the accident to plaintiff until after May 10, 1960, when she was served with Reich's summons and complaint. Plaintiff's complaint asked for a judgment declaring that it was not obliged to defend the Reich action because (1) Jane was not driving with the permission of the owner, and (2) even if she had been, she had failed to give plaintiff notice of the accident as required by the policy.
The trial judge ruled that Bruno had given Meisch such broad authority that Meisch could give Jane the permission to drive Bruno's car required by the policy, and that Meisch had done so. Although this holding is attacked by plaintiff in this appeal, we find it unnecessary to pass on it because we hold that the policy was forfeited for failure to give the required notice.
The trial judge found that Jane had failed to give the notice required by the policy, and that such failure ordinarily would be fatal, but he held that plaintiff had waived that breach. Plaintiff contends that there was no such waiver. We agree.
The facts pertaining to the issue of waiver are as follows:
The Reich summons and complaint was dated May 4, 1960. The action was in the Superior Court, Law Division, Hudson County. It was served on Jane May 10. She turned it over to plaintiff's agent, who had written the policy for her father. The agent mailed it to plaintiff, at its office in East Orange, *497 on Friday, May 20, with a letter reading as follows (emphasis ours):
"Gentlemen:
We are enclosing herewith notice of the above accident together with Summons which was served upon the insured on May 10, 1960.
It is our understanding that at the time of the accident Jane Aderente was driving a vehicle owned by John Bruno. She has been unsuccessful in attempting to contact Mr. Bruno at the present time to determine whether he carried Liability coverage on his vehicle at the time of the accident. Miss Aderente is away at the present time and will return to her home next week. Her Father, Joseph P. Aderente, has asked for a postponement through his Attorney, Mr. Schnidierman who may be contacted at Bureau of Elections Hall of Records, Jersey City, N.J.
Please acknowledge receipt of these enclosures.
 Very truly yours,
 Frank Bucino, Inc.
 By: McMurray
 Insurance Dept."
If the Bruno (Home) policy covered, that policy would be the "primary" carrier, and plaintiff would only be an "excess" carrier; i.e., it would pay only after Bruno's policy was exhausted.
On Monday, May 23, the next business day, plaintiff caused its attorney, William A. Davenport, to file an answer on Jane's behalf. An interoffice memo, dated May 25 from George E. Taylor, plaintiff's manager, to one of its employees, directing him to find out who insured Bruno, said: "I had Mr. Davenport enter an Appearance in behalf of Jane Aderente because of the limited time to answer and Mr. Davenport will provide the other insurer with a Substitution of Attorney form. Please attend to this without delay."
Plaintiff's Assistant Claims Manager Linfante testified that when the answer was filed "we didn't have any reason to believe any question of coverage at that time" [sic].
On June 2 plaintiff wrote Jane the following letter:
"Dear Madam: 
We are in receipt of Summons and Complaint which we understand was served upon you in an action brought against you in the Superior *498 Court of New Jersey, Law Division, Hudson County, Docket Number L-12734-59 by Roger Reich for personal injuries as a result of an accident which occurred on or about September 26th, 1959.
We call your attention to the following facts.
First, the damages claimed for injuries to Mr. Reich is $20,000. and that the applicable limits of liability under policy number FA 083830 issued to Mr. Joseph P. Aderente having to do with protection for you with respect to the occurrence upon which the suit is based is limited to $10,000. for bodily injuries to one person.
Secondly, there appears to be some question as to whether the aforesaid policy affords coverage to you under the circumstances, because of Condition #3 of the policy which reads as follows, `Notice, In the event of an accident, occurrence or loss written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of all available witnesses should be given by or for the insured to the company or any of its authorized agents as soon as practicable.'
Thirdly, under Paragraph (b) of PERSONS INSURED, Part I of the policy with respect to a non-owned automobile the person insured is any relative of the named insured but only with respect to a private passenger automobile or trailer provided the actual use thereof is with the permission of the owner.
It appears that the above quoted conditions have not been complied with.
While the question of coverage is under consideration it is imperative, for the protection of which every party may be ultimately liable, that the above matter be investigated [sic].
We shall be glad to do this without cost or obligation to you provided we can do so without prejudice to our position.
We, therefore, propose to undertake the necessary investigation of this matter until such time as the coverage questions are resolved and due notice thereof is given to you with the distinct understanding that such action is not to be construed as an admission of liability under the policy nor as a waiver of any of our rights. It is also agreed that none of your rights are to be construed as being waived thereby nor is any admission of liability on your part to be construed.
Unless we receive written notice to the contrary, within five days of the date of this letter, we shall assume that you agree to our handling of this matter with a full reservation of rights to all parties, we shall proceed accordingly.
 Very truly yours,
 A.A. Linfante
 Assistant Manager"
Jane did not reply.
Also, on June 2 plaintiff wrote to Home, which it had learned insured Bruno, asking whether Home would take over *499 the defense. The letter concluded: "Our Attorney, Mr. William A. Davenport, has already entered an appearance in behalf of Miss Jane Aderente, but if you will assume the defense of this matter we shall have him forward all papers to you together with Substitution of Attorney." Home did not reply.
Having heard nothing from Jane in reply to the letter of June 2, plaintiff, on June 7, hired the Andrus Adjustment Bureau, an independent contractor, to investigate. As part of that investigation, an Andrus operative interviewed Jane on June 9. He took a statement from her in which she admitted that she had never given notice of the accident until she was sued because "I assumed that Mr. Bruno's insurance coverage would cover this accident, and I was unaware that my father's insurance coverage on a car might be involved in this matter. And the accident was not reported to his insurance broker." This was not a legal justification for her failure to give notice to plaintiff. See Ebert v. Balter, 74 N.J. Super. 466 (App. Div. 1962); cf. Bass v. Allstate Ins. Co., 77 N.J. Super. 491 (App. Div. 1962).
The Andrus Adjustment Bureau submitted its report to plaintiff on June 28. On July 7 plaintiff wrote Jane as follows:
"Dear Miss Aderente: 
In accordance with our letter of June 2nd, 1960, we have completed the investigation of the above captioned matter and find that although you knew of the accident at the time it occurred, nevertheless, you made no report to us until some nine months later. Moreover, our investigation discloses that you did not have permission of the owner of the vehicle which you were operating.
Therefore, for these and other reasons we are disclaiming any and all liability under the terms and provisions of our policy and return herewith Summons and Complaint together with our Attorney's answer to the Complaint as well as Substitution of Attorney for your personal attention and we urge that you immediately consult your personal Attorney so that your interest in this matter may be protected.
 Very truly yours,
 A.A. Linfante
 Assistant Manager"
*500 Jane did not reply, did not retain another attorney, did not file the substitution of attorney, and took no step in the Reich action. In fact, she did not appear in the declaratory judgment action either, although she was served, and a default was entered in the declaratory judgment action against her.
Plaintiff took no step in the Reich action after it filed the answer on Jane's behalf. However, since Jane had never filed the substitution of attorney which plaintiff had sent her on July 7, 1960, Mr. Davenport moved, on March 17, 1961, "to be relieved as attorney" for her. The motion was denied by the Law Division. We do not know the reason for the denial except that the order recites: "no good reason having been shown." Shortly thereafter, this declaratory judgment action was instituted.
To begin with, it is to be noted that the trial judge did not find, nor is it claimed, that Jane was prejudiced by plaintiff's filing of the answer on her behalf, or by any action taken by plaintiff.
Next, we dispose of the argument that the Law Division order denying Mr. Davenport's motion "to be relieved as attorney" is res judicata, or at least strong evidence that plaintiff waived the breach or is estopped to assert it. We do not know on what grounds the motion was made, but, whatever they were, the order could have no material bearing upon the issues in this case. The motion was not by plaintiff, but by Mr. Davenport as a lawyer and an officer of the court, to be relieved of record as Jane's attorney. That motion was merely one addressed to the calendar. Plaintiff's liability to Jane could not have been adjudicated on that motion. Plaintiff's liability or non-liability was not necessarily dispositive of the motion. Even if plaintiff was not liable on its policy, the Law Division had the right, in its discretion, to refuse Mr. Davenport's motion; for example, if he was dilatory in making it, and it would unreasonably delay the trial or disrupt the calendar to grant it. Refusing him permission to withdraw was not an adjudication that plaintiff was bound by its policy, any more than permitting him to withdraw *501 would have been an adjudication that the policy had been forfeited. Cf. O'Dowd v. United States Fidelity & Guaranty Co., 117 N.J.L. 444 (E. & A. 1937); Cook v. Preferred Accident Insurance Co., 114 N.J.L. 141 (E. & A. 1935).
We turn, then, to the question of waiver.
The Supreme Court pointed out in Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 130 (1962), that "In dealing with `waiver' one must keep in mind that the term is used loosely to embrace a number of concepts * * *" which "are distinct and vary in their elements." However, one element is constant  the insurer must have actual or imputed knowledge of the breach before it can be said to have waived it or be estopped from asserting it; and if the insurer only suspects, it is entitled to a reasonable time to investigate. Merchants Ind. Corp. v. Eggleston, supra.
Here it appears (and the trial court did not find otherwise) that plaintiff did not know, when it filed the answer on May 23, that Jane had never given notice. It must be remembered that plaintiff's policy permitted her to give notice to "any of its authorized agents," of whom there must be many. Furthermore, even if plaintiff had reason to suspect that Jane had never given notice before she was served with the Reich papers, plaintiff did not know whether Jane had a valid excuse for her failure to give earlier notice. Bass v. Allstate Ins. Co., supra; Hutt v. Travelers Insurance Co., 110 N.J.L. 57 (E. & A. 1933). Hence, it was essential for plaintiff to investigate and, as the trial court said, plaintiff was entitled to a reasonable time to do so.
We know of no rule of law that requires an insurance company, under circumstances such as existed here, to refrain from filing an answer on behalf of the assured unless it first has in hand a non-waiver agreement signed by the insured. In 7A Appleman, Insurance Law and Practice, § 4693, pp. 529-530 (1962), the author says:
"* * * an entry of an appearance for the insured by the insurer does not of itself constitute a waiver of available defenses, but the insurer is entitled to a reasonable time in which to investigate the *502 facts. And the insurer may withdraw from the defense upon learning of facts which constitute a policy breach, and no waiver or estoppel will arise."
See also Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A.L.R. 146 (Sup. Ct. 1934); cf. Weatherwax v. Royal Indemnity Co., 250 N.Y. 281, 165 N.E. 293 (Ct. App. 1929).
The summons here was tested May 4, required answer within 20 days, and plaintiff received it on May 23. There was nothing on the face of the summons and complaint to show, officially and reliably, when it had been served. True, the agent's forwarding letter said that Jane had said she was served on May 10, but it would have been perilous for the insurance company to rely on this statement. It was not unreasonable for plaintiff to "play safe" and file the answer at once. Indeed, we think it is to the best interests of the insured as well as the company, in cases such as this, that the answer be filed without delay. The insured and the company can then deal with each other to settle all questions in doubt between them without the pressure of watching the time to answer the injured party's complaint. It seems to us that this is the only practical rule. Certainly the insured himself would not want the company to deny liability at that point, nor would the insured want to file the answer himself then.
To require the insurer to ask for an extension of time to file the answer would be as impractical as it would be undesirable. In the first place, there is no assurance that the injured party would grant any extension. If he did, for how long would it be? Would it be enough to cover the period required for an investigation, or for obtaining a non-waiver agreement signed by the insured? Would the insurer be required to ask for further extensions? Would the court agree to a sufficiently long extension? In short, such a rule would be of no benefit to the insured, a danger and a harassment to the insurance industry, and an unnecessary and undesirable interference with court calendars.
The argument is made that plaintiff should have obtained a non-waiver agreement, signed by Jane, before the answer was *503 filed. But, as we have seen, that did not appear to the plaintiff to be necessary when the summons and complaint were received on May 23, and, even if it had so appeared, it was reasonable for the insurer to believe that it did not have time then to obtain a non-waiver agreement, particularly since the agent's letter stated that Jane would be away for a week.
It is not essential that a non-waiver agreement be signed by the insured. A non-waiver agreement may be spelled out from the insured's acquiesence to notice received from the insurance company that it is proceeding under a reservation of its rights. Merchants Ind. Corp. v. Eggleston, supra, at p. 126; Neilson v. American Mutual Liability Co., Boston, 111 N.J.L. 345 (E. & A. 1933); Zisko v. Travelers Insurance Co., 117 N.J.L. 366, 368 (E. & A. 1937); Weatherwax v. Royal Indemnity Co., supra; 7A Appleman, Insurance Law and Practice, § 4694, pp. 539, 545, 546 (1962).
We hold that the letter of June 2 sent by plaintiff to Jane was a sufficient reservation of its rights, and, when Jane did not reply, it constituted a non-waiver agreement. We hold also that plaintiff sent the letter of June 2 with reasonable diligence after the filing of the answer on May 23. June 2 was only eight working days after the answer was filed, and it was necessary to make the investigation above mentioned.
As we have said, the letter of June 2 gave Jane five days within which to demur to the insurer's proceeding under a reservation of its rights. When the five days went by with no word from Jane, the insurer retained the Andrus Adjustment Bureau to make the investigation. Andrus did not report until June 28, and the insured disclaimed on July 7  certainly not an unreasonable delay.
For the foregoing reasons, so much of the judgment as held plaintiff liable on its policy is reversed. Since Jane and Reich have not appealed, that portion of the judgment which exonerates Home Insurance Company from liability remains unaffected by this reversal. No costs.