526 P.2d 206

**Oscar F. CRAWFORD, Plaintiff-Appellee Cross-Appellant,**

**v.**

**AMERICAN EMPLOYERS' INSURANCE COMPANY, a corporation, Defendant-Appellant Cross-Appellee.**

**No. 1054.**

Court of Appeals of New Mexico.

May 29, 1974.

Rehearing Denied June 19, 1974.

Certiorari Issued Aug. 5, 1974.

Sutin, J., dissented and filed an opinion.

**614**

Charles B. Larrabee, Rex D. Throckmorton, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, R. E. Richards, Girand & Richards, Hobbs, for appellant and cross-appellee.

Harold L. Hensley Jr., Hinkle, Bondurant, Cox & Eaton, Don M. Fedric, Hunker, Fedric & Higginbotham, Roswell, for appellee and cross-appellant.

## OPINION

HERNANDEZ, Judge.

This case involves the appeal of a judgment arising from a jury verdict for the plaintiff, Oscar F. Crawford (Insured), in an action brought alleging breach of contract and bad faith and negligence of the defendant (Insurer) which resulted in a judgment against the Insurer in the sum of $633,000.

The Insurer alleges three points of error: (1) that Insurer was entitled to a directed verdict on the issues submitted to the jury; (2) that the trial court's instruction on .the Insured's theory of the case created false issues; (3) that the trial court erred in failing to give Insurer's instruction pertaining to prejudice.

The Insured cross-appealed alleging error for failure to instruct on punitive damages.

We affirm.

A prior action involving the Insured arose out of a one-car accident in which Lonnie Woolett was rendered a paraplegic. The Insured's business associate, John M. Penrose, was the driver of the car. Woolett's complaint prayed for compensatory, special and punitive damages which totaled $3,000,000 plus $150,000 for alleged breach of contract for failure to provide liability insurance coverage.

The Insured's policy provided for a maximum bodily injury benefit of $100,000 for each person. It excluded coverage for employees of the Insured if the accident arose out of the use of the automobile in the business of the Insured. It did not apply to liability assumed by the Insured under any contract or agreement nor did it provide coverage for punitive damages. It did provide that the Insurer would defend any suit, even if the suit was groundless, false or fraudulent. It also provided that the Insurer could make such investigation, negotiation and settlement of any claim or suit as it deemed expedient.

The trial court in the instant action concluded that the issue of whether Woolett was an employee was litigated in the prior action and determined adversely to the Insured. Therefore, it held as a matter of law that the employee exclusion applied. This holding is not questioned on appeal.

The defense of the prior litigation from investigation through trial to judgment was conducted by persons and attorneys retained by the Insurer.

Insurer's points 1 and 2 will be considered together and as prologue we wish to set forth certain rules of law that will govern that consideration.

The relationship of Insurer and Insured gives rise to a duty on the part of the Insurer to act in good faith in all of its relations with the Insured. No one single definition of "good faith" is practicable because of the infinite variety of situations in which problems concerning it might arise. Thus the question of good faith or its converse bad faith must be determined from the particular facts in each case. Lujan v. Gonzales, 84 N.M. 229, 501 P.2d 673 (Ct.App.1972).

[2] " * * * [A] party is entitled to have the jury instructed on all correct legal theories of his case which are supported by substantial evidence." LeBarge v.

Stewart, 84 N.M. 222, 501 P.2d 666 (Ct. App.1972).

Upon a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the party resisting the motion and indulge all reasonable inferences in support of him and ignoring conflicts in the evidence unfavorable to him. If reasonable minds might differ as to the conclusion to be reached from the evidence or permissible inferences, then the question is for the jury. Archuleta v. Johnston, 83 N.M. 380, 492 P.2d 997 (Ct.App.1971).

The facts most favorable to the verdict are these: The accident out of which the initial action arose occurred on May 31, 1966. The Insurer upon being notified of the accident ordered an investigation. On June 2, 1966 the investigators submitted their report which indicated that Woolett claimed to be an employee of the Insured. On May 24, 1967 Woolett filed suit in the Superior Court in San Francisco, California, against the Insured and others. Defense of the suit was tendered to the Insurer who accepted and engaged attorney Robert E. Friedrich on June 12, 1967 to handle the defense. Friedrich was an experienced trial attorney who had represented the Insurer for about five and one-half years on a case to case referral basis. On June 19, 1967 Friedrich wrote to the Insurer:

"I have conducted a detailed review of this file, and, as you have so aptly observed * * * two things are most readily apparent * * * (2) Whether or not the employee exclusion is applicable to the coverage claim herein. What is now required * * * is an immediate opinion from a New Mexico lawyer * * * [w]hether or not an employee exclusion is a valid exclusion in New Mexico.

* * * * * *

If we intend to decline coverage * * * this should be done at the earliest possible date, so they cannot claim prejudice by the delay in securing other

counsel. In any event, they should be advised to obtain counsel, if for no other reason than that the complaint far exceeds the amounts of their coverage."

On July 28, 1967 the Insured signed a reservation of rights agreement prepared by attorney Russell Mann, portions of which are as follows:

"WHEREAS, the INSURED is desirous of having the COMPANY, its agents, representatives and attorneys to continue to investigate the aforesaid alleged losses, possibly negotiate for a settlement, and to furnish to INSURED a full and complete defense to said cause * * * WHEREAS, the COMPANY is desirous of continuing * * * to furnish INSURED with a full and complete defense * * * with the understanding that such investigation, possible settlement negotiations and defense * * * shall not in any way change, waive, invalidate or forfeit any of the terms, conditions or requirements of the subject insurance policy or any of the rights of any of the parties hereto under said policy.

* * * * * *

* * * INSURED hereby covenants and agrees with the COMPANY that the COMPANY'S agents, representatives or attorneys may continue to investigate the alleged losses, damages, causes or circumstances surrounding the occurrence in question, possibly negotiate for settlement and furnish to the INSURED a full and complete defense to such cause and that no such action taken by the COMPANY shall in any way waive any right that the COMPANY may now or hereinafter have, under the terms of the policy * * * to escape liability from any judgment that may be rendered against the INSURED and the INSURED does hereby expressly consent and accede to the reservations by the COMPANY of all its rights in the premises * * * so that the rights of the said COMPANY will in all respects be identical with its rights had it refused

to participate in such investigation, possible settlement negotiations and defense of any claims made against INSURED * * *"

It was signed by the Insured and "AMERICAN EMPLOYERS INSURANCE COMPANY By Russell D. Mann, Attorney and Agent."

On January 9, 1968 Friedrich wrote the following to the Insurer:

"Needless to say in view of the very substantial injuries which the plaintiff received, this is a very serious case, indeed, and an excess letter should be directed to Oscar F. Crawford. * * *

* * * * * *

It might be will [sic] to point out in your excess letter that if Woolett should establish that he is an employee of any of the addressees of the letter, that the policy contains language which would exclude any coverage as to the claim brought by him. * * *

This is certainly a case of doubtful liability, but one with a very large potential exposure, and as we have discussed many times, the coverage question remains obscure."

On January 22, 1968 Friedrich wrote to the Insurer:

"Following our discussion I am dictating herein what I feel would be an appropriate form of excess letter. * * * As I explained, in discussing the coverage and defense situation with Mr. Mann, the attorney employed by your Dallas Office in Roswell, New Mexico, he told me that there was no New Mexico law on the subject of a determination of the existence of coverage. * * *

* * * * * *

This, of course, gives rise to the thought that perhaps the thing to do is to bring a declaratory relief action in New Mexico, to determine whether or not there is coverage."

On February 2, 1968 in response to Friedrich's suggestion the Insurer wrote the following to the Insured:

"In this action, the plaintiff asks for damages in excess of the policy limits * * * You are further advised that said policy does not cover contractual matters, such as * * * the claim of Mr. Woolett, that he was promised $150,000 worth of insurance and, also, that punitive damages in any form are not covered by this policy. * * * It is suggested that while Mr. Friedrich will represent your interests pursuant to the reservation of rights agreement * * * you may choose to employ counsel of your own selection and at your own expense to represent your interests in connection with any possible exposure beyond the limits of this policy. * * *"

On September 4, 1969 Friedrich wrote to Mr. Penrose, one of the defendants in the initial action, with copies to the Insured and Attorney Mann, telling him of an offer of settlement received from Woolett's attorney on August 29, 1969 offering to settle for $175,000. The letter also stated: "I have been in contact with Employers Group of Insurance Companies, as well as Russell Mann and as of now I do not know what either the insurance company or Mr. Crawford will do, if anything." Mr. Mann called the Insured in connection with this offer and asked if he wanted to settle. The Insured said he did not. Mr. Mann made no recommendations to the Insured nor did he tell him what the Insurer might or might not do. The Insurer made no counter-offer nor did it solicit other offers at lesser figures.

Friedrich in answer to questions relating to his discussions with the Insurer concerning Woolett's offer of August 28, 1969 testified as follows:

"A. The thread of it was that the policy limits being $100,000, that it would require that Mr. Crawford contribute in order to come close to the $175,000. The question arose as to whether or not the company was prepared to pay the $100,000.

"Q. I take it that their decision was not to do so?

"A. I suggested that they pay $100,000, and the report eventually came back to me that they would not do so."

He further testified:

" * * * As to Mr. Crawford, all of the contacts until the time of this deposition were made through Mr. Mann, and I was at all times informed that Mr. Crawford was unwilling to make any payment of any amount towards any settlement. And I had solicited from Mr. Resner [Woolett's attorney] an offer or asked him to make an offer, and I had at the same time advised the company that if an offer was received within the policy limits, that it was in the best interests of all concerned that it should be paid. * * * Later after this offer was received, I asked the company to extend the policy limits authority to me, if only for a limited period of time, and this was not done."

Of particular significance is the Insurer's letter to Friedrich of October 27, 1969 which states in part:

"We have concluded that the case is fraught with potential conflicts of interest * * *. [W]e have carefully brought out to everybody's attention that if the plaintiff is an employee of Penrose, then there is no coverage under this policy. We are confronted with multiple traces, all the way from denial of coverage to denial of liability and subsequent litigation of that issue as well. Nevertheless, because of the very difficult problems involved and to provide all of the people involved with the maximum protection possible, it is our conclusion that we must introduce into this case other counsel. * * * [Y]our office should continue to represent John M. Penrose * * *. [W]e should continue the defense of Crawford through the office of Russell D. Mann. * * *

* * * * * *

It is still our Company's attitude that since the plaintiff has alleged employment that we are not responsible and do not provide coverage under this contract. * * * [I]t is entirely possible, as a matter of fact probably [sic], that we will associate other counsel on behalf of American Employers Insurance Company. * * *"

The Insurer did in fact retain Mr. Preston N. Ericksen to represent itself on November 4, 1969. Mr. Ericksen's testimony as to what he was supposed to do " * * * was primarily to investigate what procedure should be undertaken to protect the position of the company that there was no coverage." Some time during the latter part of December, 1969 it was decided that Mr. Ericksen should file a declaratory relief action to resolve the question of coverage. He was also to seek an injunction to stay the trial of the Woolett case which was set for March 2, 1970, pending the resolution of coverage. The declaratory relief action was filed February 12, 1970. A temporary restraining order dated February 16, 1970 staying the trial of the Woolett case was issued and an order to show cause on the matter was set for March 22, 1970. The temporary restraining order was lifted at the hearing on the 22nd and the request for further stay denied. The Woolett case as a result of these actions was continued until March 30, 1970. The Insured was named as a party defendant in the declaratory action but never personally served. Mr. Ericksen was in the process of having him served through the Secretary of State of California when the injunction was denied. The Insured first learned of the declaratory action from Friedrich on March 30, 1970. However, no explanation was given him as to what was intended to be accomplished by it.

The trial of the initial action lasted from March 30, 1970 through April 21, 1970. On April 14, 1970 Woolett's attorney by letter to Friedrich made the following request: "On behalf of the plaintiff and my client in this action, Lonnie G. Woolett, I

herewith solicit from the defendants and the insurance carrier a good faith offer of settlement to be made prior to the conclusion of evidence in the present trial."

The letter was shown to the Insured on the 14th. No recommendations were made and no contribution requested of him by either Friedrich or Mann. On April 15, 1970 a letter dated the 14th from the Insurer to Friedrich was received and shown to the Insured. It read in part as follows:

"Our position is clear. We have a Declaratory Relief action under consideration. We do not believe there is coverage for the defendants under this contract for indemnity. We are defending under reservation. Our company has never manifested the attitude that this case should be settled (nor, we are told, has Mr. Crawford) for any reason. It is our firm conviction coverage for legal indemnity does not exist and we cannot, therefore extend an offer to settle as suggested by Mr. Resner."

The Insured testified that this was the first time that he had been told by anyone that coverage did not exist. On April 23, 1970 the Insurer wrote to the Insured:

"As you are further aware, there was a dispute between us relating to the existence of the insurance protection under our policy and the defense of Woolett's suit was handled under the terms of a Reservation of Rights agreement signed by you July 28, 1967. In California, the duty to defend is separate and distinct from the obligation to indemnify (payment of judgments) *after becoming aware of the testimony presented in the above trial* it is clear, and it is our conclusion that a contract of employment existed between you and plaintiff, Woolett. It is necessary therefore, that we advise you coverage for indemnification does not exist * * * and that we are unable to satisfy any part of the verdict rendered against you." [Emphasis ours]

Mr. Friedrich when asked about the separate representation of Mr. Penrose and Mr. Crawford at the Woolett trial answered: "We both conducted the trial, the main burden of conducting the defense was my responsibility." And "I asked most of the questions and made almost all of the objections if that is what you mean." Mr. Ericksen did not participate in the Woolett trial.

Judge Snead charged the jury that:

"Plaintiffs claims [sic] that the Defendant was negligent or breached its obligation to use good faith in dealing with Plaintiffs in one or more of the following acts:

(A) By failure to inform Plaintiffs of the decision of Defendant to deny insurance coverage in a timely and appropriate manner.

(B) Failure to resolve the question of insurance coverage in a timely and appropriate manner.

(C) Retention of defense of case after conflicts between the interests of the Plaintiffs and the Defendant were known to exist.

(D) Failure to follow the advise of counsel in the conduct of the defense.

(E) Failure to give proper consideration to the financial risks to the Plaintiffs when balanced against the monetary interests of Defendant."

The Insurer raises several questions which are peripheral to the main question of good faith: We will consider these peripheral questions first.

The Insurer argues that we must first decide whether the duty of good faith arises from contract or tort because the decision dictates the law of which State will apply, i. e., California or New Mexico. It states that if the duty arises from contract the law of New Mexico will apply since the policy was issued and countersigned in New Mexico and conversely if tort, the law of California will apply since that is where all of the alleged acts of bad faith occurred.

■ As we stated earlier it is the relationship of the Insurer and Insured that gives rise to the duty. That relationship

has its inception in the contract of insurance, however, the breach of the duty can embrace more than the breach of the implied covenant of good faith. It can be the exercise of poor judgment not amounting to negligence or it can be negligence. It can also embrace an intent to mislead or deceive. Consequently, the breach of the duty of good faith sounds in both contract and tort and we apply the law of New Mexico. Comunale v. Traders & General Insurance Company, 50 Cal.2d 654, 328 P. 2d 198 (1958).

■ The Insurer contends that since it was determined that Woolett was an employee of the Insured and hence there was no coverage there was no duty of good faith. That is to say, that the determination that there was no coverage retroactively absolved the Insurer of all duty of good faith. As was pointed out in Lujan v. Gonzales, supra, the obligation of an Insurer to pay is independent of its obligation to defend. The subsequent determination that there was no coverage did not relieve the Insurer of its duty of acting in good faith in the conduct of that defense.

■ The Insurer alleges that it had no obligation to file a declaratory judgment action as to coverage prior to the Woolett suit. That is correct. What it had was the duty to act in good faith in its relations with the Insured. There are several things that it could or should have done to fulfill this obligation. One of which was to have had the question of coverage determined in a separate action far enough in advance of the Woolett suit so that the conduct of that defense would not have been affected by having that question unanswered. The Insurer's abortive eleventh hour action is pertinent only in so far as it relates to the question of the Insurer's breach of the duty of good faith.

■ The Insurer also contends that the conflict of interest between it and the Insured over the question of coverage was not such as would excuse it from its duty to defend. This, too, is correct.

"* * * It is generally held that the existence of a conflict of interest alone does not excuse an insurer from defending. * * * [Citation omitted] Moreover, there are several methods of resolving the conflict, none of which involve an abdication of the insurer's duty to defend under the insurance contract. See Employers' Fire Insurance Co. v. Beals, 103 R.I. 623, 240 A.2d 397 (1968); Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 267 A.2d 7 (1970). * * *"

Insurer claims that it sought to avoid the conflicts in every way possible, even to the extent of retaining three attorneys to "protect everyone's interest." We pass for the moment the question of what an Insurer should do when faced with such a dilemma. This record graphically demonstrates that attorneys retained by an insurer to represent the insured in circumstances such as these are placed in an untenable position of divided loyalty which cannot be allowed. Any objective reader of the foregoing correspondence could only conclude that they were all written with the best interest of the Insurer in mind.

■ Defendant argues that: "* * * [B]ad faith has been found in a variety of situations but in every instance the insurance carrier either wrongfully refused to defend the tort action, wrongfully denied coverage or wrongfully refused to accept a settlement offer within the policy limits." Granted that those are the usual situations where acts of bad faith have arisen but those are not the only situations where they might arise. The duty of good faith cannot be so narrowly circumscribed. As we stated above there can be an infinite variety of situations out of which such acts might arise. Lujan v. Gonzales, supra; see Yeomans v. All State Insurance Co., 121 N.J.Super. 96, 296 A.2d 96 (1972).

■ We turn now to the primary issue of whether under the particular circumstances of this case the Insurer breached its obligation of good faith. The record is clear that from the outset Insurer was

aware of the serious conflict of interest that existed as to coverage. Over two and one-half years before trial they were advised that if they were going to deny coverage they should do so as soon as possible to avoid prejudice to the Insured. Half a year later they were advised to tell the Insured that the policy contained language which would exclude coverage should it be determined that Woolett was the Insured's employee. On April 15, 1970 in the midst of trial the Insured was notified that coverage was being denied.

■ The acceptance by the Insurer of the defense knowing that a serious conflict of interest existed, which would be resolved in that litigation, without notifying the Insured of the conflict in terms that he would understand and with sufficient emphasis that he would appreciate the gravity of the situation that he faced was a breach of good faith. The continued control of the defense after frequent admonishments by counsel to make full disclosure of their position borders on intentional deception. True they did have the Insured sign a reservation of rights agreement. This agreement had provisions relative to coverage which were couched in terms so general that only those experienced in insurance law could appreciate their portent. Such a reservation cannot be used as a defense to a charge of bad faith.

■ Where a conflict of interest as serious as this one exists between an insurer and its insured which could affect decisions as to settlement, the strategy and manner of the defense, decisions as to the need for collateral actions, etc., the insurer must insist that the insured retain separate *counsel of his own choosing*. The reasonable value of these attorney's fees should be borne by the insurer. To do otherwise would allow an insurer to shift to its insured the defense to which he is entitled by the terms of the policy. See Satterwhite v. Stolz, 79 N.M. 320, 442 P.2d 810 (Ct. App.1968); Prashker v. United States Guarantee Company, 1 N.Y.2d 584, 136 N. E.2d 871 (1956).

■ As to the trial court's instruction on the Insurer's theory of the case creating false issues, there is no merit to this contention.

The introduction to N.M.U.J.I. 3.0 reads in part as follows:

"The key to appropriate instructions is the formulation of the issues of the lawsuit. The reading of a group of abstract statements of law, even though applicable to the evidence in the case and artfully drawn are of little guidance to the jury in the duty which they are bound to perform unless the court properly summarizes the true issues.

The pleadings supply the foundation, but only the foundation. It is the evidence adduced at trial which truly determines the issues that are presented to the jury for their adjudication. No matter how adroit or bombastic the pleadings may be drawn, it is the duty of the court to submit to the jury only those issues which are supported by the evidence."

It is our opinion that the trial court's instructions correctly presented the issues as joined by the pleadings and presented by the evidence.

The trial court correctly rejected the Insurer's motion for a directed verdict because much of the evidence in this case was contradicted and reasonable minds could differ as to the inferences or conclusions to be drawn from it.

Insurer's point 3 is that the trial court erred in refusing to give the following instruction: "In order for an insurance company to be liable for its conduct toward its insured or for the conduct of an insured to relieve an insurance company of liability to an insured such conduct of one party must have resulted in prejudice to the other party."

■ The trial court did not err in refusing this instruction for two reasons: First, it was not necessary that the Insurer's conduct result in prejudice to the Insured. As we stated previously, a breach of the duty of good faith sounds in both contract and tort and prejudice is not an

essential element for recovery under either. It was necessary that the Insurer's conduct result in injury to the Insured. "Injury". is defined as something done against the right or rights of a party, producing damage. Clark v. Cassetty, 71 N.M. 89, 376 P.2d 37 (1962). We do, however, acknowledge that prejudice and damage might well result from the same injury. Second there is nothing in the record to indicate that the Insured did anything which resulted in prejudice to the Insurer.

The sole point raised in the Insured's cross-appeal is that the trial court erred in refusing to submit the issue of punitive damages to the jury.

The law in New Mexico governing this point is set forth in Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966).

> "Punitive or exemplary damages may be awarded only when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the plaintiffs' rights.
>
>      *     *     *     *     *     *
>
> * * * the trial court may properly remove a case from consideration by the jury only when no true issues of fact have been presented. * * * the right of jury trial on any issue of fact presented by the pleadings is provisional, and if the evidence fails to form such issue of fact the right of jury trial disappears. * * * In determining whether or not a question of fact has been raised on any proper issue in the case, the trial court must view the evidence in its most favorable aspect to support the party raising the issue, and indulge all reasonable inferences or conclusions to be drawn from the evidence. If reasonable minds cannot differ as to the result to be reached from a consideration of the evidence, and all inferences to be drawn therefrom, then, and only then, does the issue become one of law to be determined by the court and to be taken from the jury."

In spite of the fact that the bad faith conduct of the Insurer tended to obscure and confuse the question of punitive damages we believe that the trial judge was correct in taking this issue from the jury. Although the actions of the Insurer could be characterized as entirely self-interested they do not rise to the level of being "maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the Plaintiff's rights."

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I respectfully dissent.

Judgment should be granted defendant because: (A) There was no insurance coverage. (B) Defendant conducted its defense under a reservation of rights. (C) Defendant was entitled to a directed verdict.

## (A) *There was no insurance coverage.*

On April 13, 1972, in chambers, before the beginning of trial, in a discussion between court and counsel, the trial court stated:

> So, I take it that it is for me to determine and that I must put my shoes in the cement on that question at this stage, and *hold, as a matter of law, the exclusionary clause does apply. There was no primary coverage.* [Emphasis added].

This holding is unchallenged. "The burden of proving that there was an insurance policy in force at the time of the collision was upon the plaintiffs and they failed to sustain this burden." Bourne v. Seal, 53 Ill.App.2d 155, 203 N.E.2d 12, 17 (1964).

The importance of non-coverage was determined in State Farm Mutual Automobile Insurance Company v. Gonzales, 83 N.M. 296, 491 P.2d 513 (1971). Insurer, by a

declaratory judgment suit, sought to determine the question of its coverage under the policy. The trial court granted insurer summary judgment on this issue and no appeal was taken therefrom. However, the court permitted the case to be tried to a jury on the defenses of waiver and estoppel. The jury returned a verdict for defendants. The Supreme Court reversed and said:

> * * * As above stated, it has been judicially determined that he had no permission to take the automobile and was not covered under the policy. Thus, at no time were there any rights and duties existing between him and plaintiff under this contract.
>
> Insofar as waiver is concerned, it is apparent the "right of plaintiff to deny coverage to Gonzales" is not a right arising under the contract of insurance, and the rights and duties with which we are here concerned are those of plaintiff under the policy. * * *

In the instant case, the insurance policy, at the time of the collision, did not afford coverage to the plaintiff for injuries to Woolett.

### (B) *Defendant conducted its defense under a reservation of rights.*

In Apex Mutual Ins. Co. v. Christner, 99 Ill.App.2d 153, 240 N.E.2d 742, 747 (Ill. App. 1968), the court quoted the following:

> However, all authorities agree that quite often an insurer is faced with a dilemma as to whether to defend or to refuse to defend. In cases of doubt the answer is simple. It can (1) seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights.

The defendant insurance company defended under a reservation of rights.

On July 28, 1967, plaintiff and defendant entered into a Reservation of Rights Agreement. It provided in part that Woolett had filed suit against plaintiff and others for personal injuries arising out of an automobile accident which occurred May 31, 1966, in the State of California; that plaintiff desired to have defendant continue its investigation, possibly negotiate for a settlement and furnish plaintiff a full and complete defense; that the defendant desired to continue to investigate and furnish plaintiff with a full and complete defense, with the understanding that such matters "shall not in any way change, waive, invalidate or forfeit any of the terms, conditions or requirements of the subject insurance policy or any of the rights of any of the parties hereto under said policy * * *"; that nothing it shall do *"shall in any way constitute a waiver of any rights, which the Company may have under the terms of its policy to escape liability from any judgment that may be rendered against the said Insured in the above described litigation."* [Emphasis added].

This Reservation of Rights Agreement did affect the rights and duties of the defendant under its policy.

Plaintiff contends:

> The fact of non-coverage was not determined until *after* the California case was tried. All of the omissions of defendant in this respect were before that time and, therefore, the fact that it was later determined that no coverage was afforded is of no moment.

This contention throws the Reservation of Rights Agreement into the waste paper basket. Defendant notified plaintiff of non-coverage after the California trial. The purpose of the agreement was to protect defendant if non-coverage was determined before the present trial which took place in Roswell, New Mexico.

In *Apex Mutual,* supra, the court said (p. 747):

> The reservation of rights is a means by which, prior to determination of the liability of the insured, the insurer seeks to suspend the operation of the estoppel doctrines through a non-waiver agree-

ment. When coverage is in doubt, the insurer will offer to defend the insured under such an agreement, *reserving to the insurer all of its policy defenses in case the insured is found liable.* [Emphasis added].

When the insurer undertakes the defense without a reservation of rights agreement or other disclaimer of liability, it waives its defense of non-coverage. Pendleton v. Pan American Fire and Cas. Co., 317 F.2d 96 (10th Cir. N.M.1963).

An insurance company can protect its rights and declare its duties under its insurance policy with the consent of the insured. If the insured refuses to consent to the terms of the Reservation of Rights Agreement, he can undertake the defense himself. Mundry v. Great American Ins. Co., 369 F.2d 678 (2nd Cir. 1966). He has ultimate control of the litigation. Reynolds v. Maramorosch, 208 Misc. 626, 144 N.Y.S.2d 900 (1955). He can force the insurance company to gamble its liability under the policy.

Plaintiff's contention that non-coverage was determined after the California trial has no merit.

### (C) *Defendant was entitled to a directed verdict.*

At the close of all the evidence, the trial court characterized the specific issues left in the case: (1) defendant's alleged failure to use good faith in handling the settlement negotiations; (2) defendant's failure to make a timely and adequate disclosure to plaintiff of *defendant's position* on the question of coverage; and (3) defendant's failure to make a timely resolution of the coverage questions with the plaintiff. .

Defendant moved for a directed verdict which the court denied. The trial court erred. The law and the record does not support plaintiff's claims. Garcia v. Universal Constructors, Inc., 82 N.M. 70, 475 P.2d 464 (Ct.App.1970).

### (1) *Settlement negotiations are not an issue of fact.*

In its motion, defendant stated: " * *. * There is no duty to settle where there is no coverage." This is the law. The failure to handle settlement negotiations did not constitute any breach of duty by defendant to the plaintiff. Prickett v. Hawkeye-Security Ins. Co., 282 F.2d 294, 300 (10th Cir. 1960); Panizzi v. State Farm Mutual Automobile Ins. Co., 386 F.2d 600, 607 (3rd Cir. 1967); Bourne v. Seal, supra.

Plaintiff relies on Ging v. American Liberty Ins. Co., 423 F.2d 115 (5th Cir. 1970); Western Casualty and Surety Co. v. Herman, 405 F.2d 121 (8th Cir. 1968); Radcliffe v. Franklin National Ins. Co. of N.Y., 208 Or. 1, 298 P.2d 1002 (1956); Foundation Reserve Ins. Co. v. Kelly, 388 F.2d 528 (10th Cir. N.M.1968).

In *Western, Radcliffe,* and *Foundation,* insurance coverage existed. In *Ging,* the insurance company undertook the defense of a suit seeking both compensatory and punitive damages. There was no coverage for punitive damages. However, the insurance company obtained no reservation of rights to protect itself against liability for non-coverage of punitive damages. It proceeded to defend against the claim of punitive damages. Settlement negotiations were not an issue.

In the absence of coverage, there was no duty of defendant "to lay $100,000 on the table as the price of settlement."

### (2) *There was no failure to make a timely and adequate disclosure of defendant's position on coverage.*

The second matter which the trial court held to be an issue of fact was the bad faith or negligence of the defendant in failing to make a timely and adequate disclosure to plaintiff of *defendant's position* on the question of coverage.

Defendant's position on the question of coverage was set forth in the Reservation of Rights Agreement.

The accident occurred May 31, 1966. The second amended complaint by Woolett against Crawford was filed on October 20, 1967. The answer to the second amended complaint is dated January 8, 1968, but the date of filing does not appear. Trial began March 31, 1970. The Reservation of Rights Agreement was executed July 28, 1967. This date preceded the filing of the second amended complaint, the answer thereto and trial.

Under the record in this case, defendant made a timely disclosure. Stillwell v. Iowa National Mutual Ins. Co., 205 Va. 588, 139 S.E.2d 72 (1964); State Farm Mutual Ins. Co. v. Anderson, 104 Ga.App. 815, 123 S.E. 2d 191 (1961); United States Cas. Co. v. Home Ins. Co., 79 N.J.Super. 493, 192 A. 2d 169 (1963); State Farm Mutual Auto Ins. Co. v. MFA Mutual Ins. Co., 485 S. W.2d 397 (Mo.1972); Inghram v. Dairyland Mutual Ins. Co., 178 N.W.2d 299 (Iowa 1970); 45 C.J.S. Insurance § 714. Disclosure is not timely where a reservation of rights is delayed until almost a year and a half after filing an answer. Allstate Ins. Co. v. Keller, 17 Ill.App.2d 44, 149 N. E.2d 482 (1958).

The disclosure was adequate. It speaks for itself. American Surety Co. of N.Y. v. Gold, 375 F.2d 523, 528 (10th Cir. 1967); Gallaway v. Schied, 73 Ill.App.2d 116, 219 N.E.2d 718, 723 (1966); State Farm Mutual v. Anderson, supra; United States Cas. Co. v. Home Ins. Co., supra; Hardware Mut. Casualty Co. v. Higgason, 175 Tenn. 357, 134 S.W.2d 169 (1939). Compare Henry v. Johnson, 191 Kan. 369, 381 P.2d 538 (1963); Popovich v. Gonzales, 4 Ill. App.3d 227, 280 N.E.2d 757 (1972).

Plaintiff testified that on July 28, 1967, he understood the instrument to mean " * * * it would in no way affect their liability under anything that might exist * * *." He testified that he read the first page and that portion of the instrument which states:

The intent and purpose of this agreement is to permit a full and impartial investigation, explore settlement possibilities and a full and complete defense of all claims brought against insured as a result of the hereinabove described automobile accident without in any way incurring any admission of liability on the part of the company or impairing or waiving any of the rights of any party hereto except that insured waives the right to insist that such handling of the claim by the company will constitute any admission of liability on the part of the company. * * *

This reading he later denied. But whether he read it or not, he was bound by the agreement. He had a duty to read the agreement before he signed it. If he could not understand it, he had a duty to have it explained to him. Morstad v. A. T. & S. F. Ry. Co., 23 N.M. 663, 170 P. 886 (1918). With a $3,000,000 claim staring him in the face, and a RESERVATION OF RIGHTS AGREEMENT placed in his hands, it challenges the veracity of plaintiff that he did not read it without explanation or legal advice, and yet understood the meaning of it, and signed it. "As you make your bed, so you must lie on it."

As a matter of law, the defendant did not fail to give timely and adequate disclosure of defendant's position on coverage.

(3) *There was no failure on the part of defendant to make a timely resolution of the coverage questions with plaintiff.*

The third matter the trial court held to be an issue of fact was the failure of defendant to make a timely resolution of the coverage questions with the plaintiff.

Plaintiff testified that Mr. Mann explained to him that his insurance did not cover a claim for punitive damages.

Plaintiff offered in evidence the deposition of Robert E. Friedrich, attorney for Penrose in the California law suit.

Mr. Friedrich testified:

Mr. Crawford was told by me the afternoon before his deposition was taken

in Mr. Mann's office that the company had expressed on more than one occasion their intention to deny coverage on the employee exclusion, and I explained my position to him in full on that situation.

And this was done again that evening in his home and it was done the following afternoon when he and Mr. Mann and his wife took me to the airport. This was when the deposition was taken. These were times this was discussed with him.

This was subsequently affirmed by Mr. Friedrich in his testimony as a witness for the defendant. Mr. Mann's testimony also confirmed the defendant's intention to deny coverage.

There was no failure on the part of defendant to make a timely resolution of the coverage questions with plaintiff.

Defendant was entitled to a directed verdict. The majority holding otherwise, I dissent.