Maureen Bourne, et al., Petitioners-Appellants, v. Hugh Kyle Seal and Multi-State Inter-Insurance Exchange (Formerly Rural Insurance Exchange), Defendants-Appellees.

## Gen. No. 49,374.

First District, Third Division.

October 8, 1964.

Rehearing denied October 30, 1964.

Rothschild, Hart, Stevens & Barry, of Chicago (Edward I. Rothschild and Richard L. McIntire, of counsel), for appellants.

George B. Collins, of Chicago, for appellee, Multi-State Inter-Insurance Exchange.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiffs obtained a judgment in Kentucky against the defendant, Hugh Kyle Seal, and brought this action to enforce the judgment against him and his insurer, Multi-State Inter-Insurance Exchange. The trial court found for the insurer and the plaintiffs have appealed.

The original litigation arose out of an automobile accident. Seal, who had been in Tennessee, was returning to his home in Illinois accompanied by the plaintiffs Blanche Johnson, Marcella Mullins and James Willis, all residents of Tennessee. While driving through Kentucky on February 10, 1957, he collided with an auto driven by a Louisiana resident, Reginald J. Bourne, whose wife, the plaintiff Maureen Bourne, was in the car with him. All six were injured. Seal, represented by Armer Mahan, a Kentucky attorney, sued Bourne in Kentucky. Bourne filed a counterclaim and his wife an intervening complaint. The

■

three occupants of Seal's car sued both Seal and Bourne. The husbands of Blanche Johnson and Marcella Mullins intervened and filed derivative actions.

After the counterclaim and the other actions were started, Attorney Mahan wrote to Seal's insurance carrier, Rural Insurance Exchange, and informed it of the claims against Seal. Rural Insurance, which was later merged into the defendant Multi-State Inter-Insurance Exchange, retained Attorney Mahan to defend these claims. Mahan undertook the defense and from that time on kept Rural, or Multi-State, fully informed of the progress of the case, the steps taken by him and by the attorneys representing the plaintiffs, and the offers and counteroffers of settlement.

Seal was 20 years of age, a married man with two children, a mechanic by trade and without funds. At one time the combined plaintiffs, under the impression that Seal's insurance coverage was $10,000, offered to settle for $9,000. Upon learning that the coverage was $20,000 for injuries arising from one accident, the $9,000 offer was withdrawn. The company then authorized a settlement of $10,000, which the plaintiffs refused. Before the case went to trial, settlement negotiations were renewed and the figure of $15,000 was arrived at by the attorneys. Attorney Mahan repeatedly advised Multi-State to accept this figure because he thought Seal would be found liable and he feared the jury verdict would exceed the policy limit. The company did not follow his advice. The case was tried in October 1960; the jury found Seal and Bourne equally guilty and awarded the plaintiffs total damages of $24,255.50. Judgments were entered against Seal for this amount. Maureen Bourne's judgment was entered against Seal only; the judgments of the other plaintiffs were entered against both Bourne and Seal. The company and Attorney

Mahan discussed the possibility of appeal and of post-trial settlement but the case was neither appealed nor settled and the judgments were never paid.

In 1961 the plaintiffs filed the present action under the Uniform Enforcement of Foreign Judgments Act, Ill Rev Stats 1961, c 77, pars 88–105. The petition prayed for an Illinois judgment against Seal and against Multi-State as his insurer. Both defendants defaulted and judgment was entered against them. Multi-State moved to vacate the default but Seal did not. Multi-State's motion was granted and it forthwith filed an answer to the plaintiffs' petition. In the answer the intimation was made for the first time that the insurance policy was not in force at the time of the collision. This defense was developed further in subsequent pleadings.

The plaintiffs, by leave of court, amended their petition to include, as judgment creditors of Seal, a complaint against the company under Section 73 of the Civil Practice Act. Ill Rev Stats 1961, c 110, § 73(2)(f). The petition, or complaint, as finally amended was in six counts. The first and second of these were the same as those in the original petition and asked, in count I, that the Kentucky judgments be registered in Illinois in full against Seal and, in count II, that they be registered against the company for the maximum provided by the policy. Count III asserted that Multi-State, because of its negligent conduct and bad faith throughout the pendency of the case, was liable to Seal for the full amount of the judgments and that the plaintiffs were entitled to recover in behalf of Seal. Counts IV and V were stricken. Count VI asserted that Multi-State was estopped from denying coverage because it had misled and damaged the plaintiffs by representing that the insurance was in force on the date of the accident.

After hearing the case without a jury, the court found that the policy which had been issued to Seal expired two days before the occurrence in Kentucky, and that the company was under no legal obligation to pay the judgments. Counts II, III and VI were dismissed.

 The principal contentions of the plaintiffs in this appeal are that the trial court erred in: (1) vacating the default judgment against the defendant; (2) not finding that a policy of insurance was in force on the date of the occurrence; (3) denying the plaintiffs' motion for the production of the company's accounting records relating to premium payments, which records, it is said, were of importance in proving the existence of insurance coverage at the time of the accident; (4) not finding that the defendant was liable to Seal and that the plaintiffs were entitled to recover in his behalf, and (5) not finding that the company was estopped from denying liability to the plaintiffs. Although the plaintiffs state that they are also appealing from the order striking counts IV and V of their complaint, the point is not argued in their brief and is not among those listed in the brief's Points and Authorities. The point, therefore, is waived. Rule 5(2)(k), Appellate Court Rules (1964) Ill Rev Stats 1963, c 110, § 101.39(1); Pipitone v. Mandala, 33 Ill App2d 461, 180 NE2d 33; Samples v. Morgan Mines, Inc., 347 Ill App 70, 106 NE2d 139.

 As to the first alleged error, neither the petition to vacate the default judgment, nor the record on appeal nor the briefs of the parties indicate whether the petition was made pursuant to Section 50 or Section 72 of the Civil Practice Act. Ill Rev Stats 1961, c 110, §§ 50 and 72. The petition was subscribed to 28 days after the default judgment was entered but, according to the record, was filed 33 days after the judgment. No point is made of

160

the filing date; the only issue raised is that the petition showed neither a meritorious defense nor due diligence. No objection to the petition appears in the record and it seems to have been treated by court and counsel as a simple petition under Section 50 rather than one under Section 72. If the petition was timely presented under Section 50, it was addressed to the discretion of the court [50(6)] and in our opinion the discretion was not abused. If the petition was under Section 72 and was presented after thirty days had elapsed, it had to show that the defendant acted with due diligence to protect its rights and that it had a meritorious defense. Till v. Kara, 22 Ill App2d 502, 161 NE2d 363; Lusk v. Bluhm, 321 Ill App 349, 53 NE2d 135. The petition alleged both but did so in terms which the plaintiffs contend were conclusional. No motion to strike was made, however, and an objection to the sufficiency of a petition to vacate under Section 72 cannot be raised on review unless it was properly presented and preserved in the trial court. Smyth v. Fargo, 307 Ill 300, 138 NE 610; Boyle v. Veterans Hauling Line, 29 Ill App2d 235, 172 NE2d 512; Thomas v. Melmed, 310 Ill App 262, 33 NE2d 919.

The principal factual issue at the trial was whether Seal was insured on the date of his accident, February 10, 1957. The court found that he was not and this finding constitutes the plaintiffs' second charge of error. Seal was the only witness at the trial; the balance of the evidence was documentary. The plaintiffs introduced 49 exhibits which for the most part consisted of interoffice memoranda of the defendant and correspondence between the defendant and Attorney Mahan. These exhibits proved either that Seal was insured on February 10, 1957, or that the company believed he was. One interoffice memorandum was a preliminary report of November 1957, which said:

"Coverage on Policy No. 14904 [Seal's policy] appears to be in order" and "Law suit has been filed on behalf of our assured . . . in . . . Kentucky." Another, in March 1960, contained the following: "Policy number 14904 issued to Hugh K. Seal. We insure Mr. Seal 10/20 liability, 4,000 property damage and 1,000 medical pay coverage. . . . Since we have 5 people who will testify against our named insured. . . . I would recommend that we go $10,000, if we can pick up all of these claims on releases." Another, in April 1960, said this: "We have 20 coverage. I am not inclined to go to 15,000 at this time."

In November 1957 the company wrote Attorney Mahan: "Please accept the assignment of representing our interests in regard to the counterclaims that have been filed against your client, and our assured, Mr. Seal." In August 1958 a letter to Mahan said: "Please be advised at this time that the policy limits on this particular assured are 10/20. . . . Also advise if there have been any settlement overtures tended [sic] you by any of the attorneys." A letter to Mahan in March 1960 replied to his inquiry as to whether the company would make a settlement offer: "I am willing to grant authorization for $10,000.00, only on the following condition: that this $10,000.00 settles each and every claim whatsoever, either the Bourne car or ours."

Other important plaintiffs' exhibits were: Seal's report of the accident made to the company in March 1957, informing it that the accident took place on February 10, 1957; a letter from the company to Seal in December 1959 informing him that the claims made in the Kentucky suit were in excess of "Policy 14904 which our company issued to you" and advising him that he could engage personal counsel to collaborate with its attorneys in defense of these claims; a check issued to Seal in 1962 by the company in partial payment of his medical expenses, and

a discovery deposition taken from Seal in August 1960 in which Seal stated that he had liability insurance of $10,000 and $20,000, and in which Attorney Mahan, who was present, confirmed Seal's statement. However, the plaintiffs introduced an exhibit which in the opinion of the trial court was decisive. It was a copy of the policy issued to Seal: Number A-14904. The expiration date of the policy was February 8, 1957.

The defendant called Seal as a witness. He testified that he had had only one policy, that this was a quarterly policy which began on November 8, 1956, and expired on February 8, 1957, two days before his accident. He said that not only the policy but the identification card sent to him by the company showed the expiration date as February 8, 1957. He further testified that the policy had not been renewed, that he turned the original policy over to his attorney, that he was not informed of the settlement discussions, that he never had "substantial" money and that he signed a statement in September 1958 which gave the day of the accident as February 2, 1957. The defendants also introduced seven exhibits. One of these was the copy of policy number A-14904, another was a letter received by the company from Attorney Mahan in March 1961 which enclosed, in his words: "Policy A-14904 issued to Hugh K. Seal for the period November 8, 1956 to February 8, 1957."

■■ In the trial court's opinion and in ours, the evidence proved that Seal's policy had expired before the accident and that he was not covered by insurance on that date. It also showed that for some reason, and for a long period of time, the company did not realize that its policy had terminated. What the reason was for this mistake is not fully disclosed by the record. It would appear as if someone's initial error had been accepted, repeated and com-

163

pounded. The long delay in uncovering the mistake is only partially explained. In its answer to count VI the company said that it first became aware that the policy did not extend to the date of the accident when a deposition was taken from Seal in 1962. The burden of proving that there was an insurance policy in force at the time of the collision was upon the plaintiffs and they failed to sustain their burden. The copy of the policy, which they and the defendant introduced in evidence, the testimony of Seal and Mahan's letter detailing the dates of the original policy, completely overcame the circumstantial evidence, which might otherwise have established a prima facie case.

The plaintiffs next contend that the court erred in not compelling the company to produce records which might have proved that a policy was in existence at the time of the accident. Almost all of the plaintiffs' exhibits were furnished by the defendant pursuant to orders of the court. The court had ordered the production of the policy in force at the time of the accident, all the correspondence, interoffice communications, statements, agreements, documents, journals and ledgers relevant to the merits of the plaintiffs' cause of action; it had also ordered the production of the underwriting files applicable to all insurance policies issued to Seal and the files relating to the lawsuits between Seal and the plaintiffs. In fact, the only discovery motion of the plaintiffs which the court denied was the motion for the production of all the company's books, accounts and records recording premium payments by Seal and all other insured persons from July 1, 1956 through December 31, 1958, and all books and records used in recording disbursements during the period of November 1, 1959 to November 1, 1962. These requests were obviously too broad. They sought information about all in-

164

sured persons, all premium payments and all disbursements over extended periods of time. This information was not relevant to the litigation and would have placed a heavy and unnecessary burden on the defendant. The plaintiffs did not attempt to modify their motion in order to limit it to Seal and it was, therefore, correctly denied.

The fourth contention, that the defendant is liable to Seal and in turn to his judgment creditors, is based on the allegation in count III of the complaint that " . . . Seal carried automobile public liability insurance with Rural Insurance Exchange which was in full force and effect at the time of the collision." As we have seen, the proof was that there was no policy of insurance in which Seal had any right or interest at the time of the collision. The plaintiffs stand in the shoes of their judgment debtor. The company has no obligation to Seal, and it has no conceivable obligation to his judgment creditors. In view of the plaintiffs' failure to sustain their fundamental premise, it becomes unnecessary to comment on the subordinate allegations of count III that the defendant, in assuming Seal's defense, handled the settlement offers negligently and in bad faith by failing to communicate the offers to him and by not giving adequate consideration to his interests. The plaintiffs cite Olympia Fields Country Club v. Bankers Indemnity Ins. Co., 325 Ill App 649, 60 NE2d 896, as authority for the proposition that the defendant is liable for the entire judgment because of the way it conducted the settlement negotiations. The case stands for the rule that an insurance company, which in bad faith refuses to settle a suit against its insured for an amount within the limits of its policy, can be held liable for the entire judgment even though the judgment is in excess of the policy limits. The Olympia Fields case is not applicable to the present

165

case. While there are some similarities in the two cases there are many dissimilarities and one insurmountable difference: the lack of a contractual obligation to defend Seal at all. The company's reluctance to negotiate a settlement is insufficient to breathe life into an expired policy.

Finally, the plaintiffs argue that the insurance company is estopped from asserting the defense of noncoverage because, as alleged in count VI of their complaint, its representations about insurance damaged the plaintiffs by causing them to decline the settlement offer of $10,000, to refuse to settle for less than $15,000, to fail to talk settlement with Seal personally and to incur the expense of the Kentucky trial.

█ The general rule of estoppel in insurance cases is that an insurer, who assumes the defense of its insured, is later estopped from denying coverage or from raising any policy defense to the loss resulting from an adverse judgment. 38 ALR2d 1148; 45 CJS, Insurance, sec 714; 29A Am Jur, Insurance, sec 1465. This, of course, is a general rule and is subject to exceptions and limitations. 22 ILP, Insurance, sec 358; Appelman, 1953 Law Forum 231.

In Illinois the rule has been applied to estop a number of different defenses subsequently raised by the insurer such as: the construction of the policy (Snyder v. United States Mut. Ins. Co., 312 Ill App 337, 38 NE2d 540); insufficient notice of the accident (Rowoldt v. Cook County Farmers Mut. Ins. Co., 305 Ill App 93, 26 NE2d 903); exclusion of coverage in the policy (Columbian Three Color Co. v. Aetna Life Ins. Co., 183 Ill App 384); breach of the cooperation clause (Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 149 NE2d 482); failure to comply with a policy requirement (Steven v. Fidelity & Cas. Co. of New York, 178 Ill App 54) and noncoverage (Lincoln Park

Arms Bldg. Corp. v. United States Fidelity & Guaranty Co., 287 Ill App 520, 5 NE2d 773).

■ The question presented here is whether an insurer who proceeds to trial in defense of its supposed insured can subsequently be estopped from denying coverage when, in fact, there was no policy at all at the time of the occurrence which gave rise to the litigation. This question has not heretofore confronted our Illinois courts. The somewhat analogous case of Lincoln Park Arms Bldg. Corp. v. United States Fidelity & Guaranty Co., supra, is relied upon by the plaintiffs. In that case the court held that it was not necessary as a prerequisite to applying the estoppel rule, that the insurance policy cover the exact party whose defense had been undertaken by the insurer. The defendant, United States Fidelity & Guaranty Company, had provided insurance coverage to a copartnership for loss incurred in the construction of a building on premises owned by the partnership. Without notifying the insurance company or changing the policy coverage, the partnership formed a building corporation for the purpose of taking over the construction, and transferred to it all its interest in the premises. After the completion of the building the insurance company audited the books of the corporation for the purpose of ascertaining the balance due on the premium, and the corporation subsequently paid the amount due. An action was commenced against the building corporation for the death of a workman engaged in the construction, and the summons which was received by the agent of the corporation was forwarded to the insurance company. The insurer handled the defense of the suit throughout the trial, but withdrew its counsel after judgment was rendered. In the subsequent garnishment action the insurance company set up the defense that the

167

partnership, not the corporation, was the insured. The trial court held in favor of the insurance company because there was no contract existing between it and the building corporation. The Appellate Court reversed, stating that the necessity of a formal notice of change in the interest of the insured was obviated by the knowledge thereof obtained by the insurance company through its audit of the books of the building corporation and the receipt and acceptance of the premium payment. The court held that the insurer was estopped from denying that the building corporation was covered under the policy.

The Lincoln Park case and the numerous cases from other states cited by the plaintiffs are to be distinguished from the case at bar where the coverage afforded by the insurance policy had ended at the time of the occurrence. The plaintiffs cite no authority which holds that under such circumstances an insurer waives its defense of non-coverage by defending the "insured." On the other hand, there are opinions from courts of other jurisdictions which indicate that estoppel will not be invoked if there is not a policy in existence at the time of the injury. In National Farmers Union Property & Casualty Co. v. Michaelson, 110 NW2d 431 (ND), liability insurance had been applied for but had not been approved or accepted by the insurance company when the applicant was involved in a highway collision in which she and six others were killed. The company, which had received the application five days before the accident, rejected the application and returned the premium check, which had been sent with the application, as soon as it heard of the accident. Regardless of its rejection of the application, the company participated in the defense of the suit brought against the estate of the applicant, without any reservation of its rights.

The court held for the insurer, refusing to apply the estoppel theory:

"We do not believe, in a case where the deceased applicant had no insurance coverage at the time of the accident resulting in the injuries for which the appellants have brought their actions, as is true here, that the company, by undertaking to assist in the defense of such uninsured person or her estate, by such action in effect created a policy, thus enabling the judgment creditors of the applicant's estate to recover from the insurance company.

"Ordinarily, the doctrines of waiver and estoppel will not operate to create a contract that never existed."

The same result occurred in Union Marine & General Ins. Co. v. Holmes, 249 Ala 294, 31 So2d 303, except that in that case, as in the present one, a policy had been duly executed and approved. The expiration date was at 12:01 a.m. on February 7, 1944, and the auto accident, which was allegedly covered by the policy, occurred at 4:45 p.m. on the same day. An insurance agent subsequently told the plaintiff's wife that the policy coverage was in effect until February 8, 1944, and that the plaintiff's loss was covered. Also, an adjuster was sent out to inspect and estimate the damages; he instructed the plaintiff to have his car towed to a garage, which the plaintiff did at a cost of $15. The court held that although these actions by the insurance company might have constituted a good basis for waiver or estoppel while the policy remained in existence, nevertheless they did not extend liability beyond the termination date stated in the policy:

"The principle of estoppel is protective only and is invoked as a shield and in the absence of primary right arising from contract or right in the ownership, use or possession of property is not applicable. It is not a weapon of offense or aggression. To create a primary right to recover for loss or damage to property insured against loss or damage all the elements of a binding contract are essential."

Also see Manufacturers & Merchants Indem. Co. v. Claman, 96 F Supp 385 (SD Iowa 1951).

■■■ We hold that the defendant has no liability to Seal because of conducting his defense (which, it is acknowledged, was competently done), and it has no liability to the plaintiffs. And, insofar as the defendant mistakenly represented that Seal's policy was in effect at the time of the accident, the estoppel rule is unavailable to establish the company's liability. The plaintiffs argue that estoppel should be available to them even though it is not to Seal. But the law is clear that where an insurer is not estopped from asserting its defense against the insured, it is not estopped from asserting its defense against the injured party in his suit to recover under the policy. 45 CJS, Insurance, sec 714; National Farmers Union Property & Casualty Co. v. Michaelson, supra. The injured person stands in no better position than the insured. Liddell v. Standard Acc. Ins. Co., 283 Mass 340, 187 NE 39; Rohlf v. Great American Mut. Indemnity Co., 27 Ohio App 208, 161 NE 232; Laroche v. Farm Bureau Mut. Automobile Ins. Co., 335 Pa 478, 7 A2d 361.

Even if we were to accept the plaintiffs' theory that estoppel is available to them although it is not available to Seal, it could not be favorably applied to the facts of this case. We fail to see how

the plaintiffs have been prejudiced. They complain that if they had known that Seal had no insurance they would have accepted the $10,000 offer made by the company. But if the company knew that its policy had expired manifestly there would have been no offer. They complain that if they had known there was no insurance they would have been willing to settle for less than $15,000. Of course, if the company was aware that its coverage had terminated it would not have settled for any sum. They complain that if they had known there was no insurance they could have talked settlement with Seal. They can still talk settlement with him and they are now in a better position to do so. Before the trial they could have argued the probability of obtaining judgments against him; now they have their judgments, and Seal is in no worse shape financially than when he had nothing and he may be better off. Besides, five of the six plaintiffs now have two judgments: they have judgments against Bourne as well as Seal. Furthermore, the plaintiffs were only interested in settling with the insurance company, not with Seal. At the time of the settlement discussions the plaintiffs knew that Seal was without funds. They themselves stated in count VI of their complaint that they were "aware of this financial situation of Hugh Kyle Seal" and that the insurance company knew or should have known that he "was without sufficient funds and unable to pay any judgments, other than a nominal judgment, against him." They complain that their reliance upon the misrepresentation of the company caused them to prepare and try the Kentucky lawsuits. They were not compelled to sue; they were the plaintiffs. They complain that the company misrepresented the facts and misled them. This charge imputes intent to deceive. Why the company would

171

want to deceive them is not suggested. Pretending there was a policy when there was none could serve no purpose beneficial to the company. Its mistaken impression that there was a policy cost the company attorney fees and other expenses in this and the Kentucky trial, $500 in medical payments to Seal, and could have cost it an additional $10,000 if its settlement offer had been accepted.

The court correctly dismissed counts II, III and VI and its order is affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.