ESIDA YASSIN, a Minor by Sofia Yassin, her Mother and Next Friend, Plaintiff-Appellant, v. CERTIFIED GROCERS OF ILLINOIS, INC., *et al.*, Defendants-Appellees and Cross-Appellants (Zurich American Insurance Company *et al.*, Garnishees and Defendants and Appellees–Cross-Appellants).

First District (2nd Division)   No. 87—2589

Opinion filed December 30, 1988.

Milton M. Blumenthal, of Chicago (Sidney Z. Karasik, of counsel), for appellants.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Kendal A. Crooks, John P. Prusik, and Joseph R. Steiger, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

This case is a sequel to *Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 502 N.E.2d 315. The minor plaintiff appealed a $300,000 judgment in her favor and against Mizyed-Yassin Corporation, in part, on the ground that the award was inadequate. We affirmed, and the supreme court denied leave to appeal. Upon the return of the mandate on May 6, 1987, the plaintiff filed garnishment proceedings against the defendants, Zurich American Insurance Company and American Guarantee Insurance Company. The only asset of Mizyed-Yassin was a policy of insurance with the garnishee defendants with a $300,000 coverage limit. The defendants had paid the mother of the plaintiff $8,000 in satisfaction of the judgment in her favor for medical expenses. The garnishment action was transferred to Judge Thomas Janczy, who had conducted the personal injury trial.

On May 13, 1987, the defendants filed a motion to tender judgment and offered to pay the sum of $293,196, representing the remaining policy limits of $292,739, interest on $300,000 from April 20, 1987, the date the supreme court denied leave to appeal, to April 30, 1987, and $456 representing costs which had been assessed by the court on December 16, 1983.

On June 10, 1987, the plaintiff filed a response to the motion to tender, alleging that the defendants had not made a proper tender as required by the statute and that the total sum due included in excess of $97,000 representing interest from the date of the judgment, October 29, 1983. At the same time the plaintiff filed a countermotion claiming that the defendants had been guilty of unreasonable and vexatious delay in payment and sought relief under the Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767); that the court should assess additional interest under the Interest Act (Ill. Rev. Stat. 1985, ch. 17, par. 6402); and that the court should impose sanctions against the defendants under the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611).

After a hearing, Judge Janczy held that the defendants were obliged to pay interest from the date of the judgment totalling over $100,000, rather than from the date the supreme court denied the petition for leave to appeal. He also denied all of the relief sought by

the plaintiff in her countermotion. The plaintiff has appealed from the order denying her countermotion; and the defendants have cross-appealed from the order requiring them to pay statutory interest from the date of the judgment. We will address the cross-appeal first.

■ The governing statute in issue provides as follows (Ill. Rev. Stat. 1985, ch. 110, par. 2—1303):

> "Judgments recovered in any court shall draw interest. at the rate of 9% per annum from the date of the judgment until satisfied ***. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment. The judgment debtor may by tender of *payment of judgment, costs and interest accrued to the date of tender,* stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment." (Emphasis added.)

The statute was construed in *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512. The issue in that case was whether or not an appealing judgment creditor was entitled to interest on the judgment during the period of his appeal. The court first held that an appealing creditor was entitled to statutory interest during the appeal period in the absence of tender and added that a valid tender must include the judgment, plus costs and *interest on the judgment. Pinkstaff*, 31 Ill. 2d at 526.

■ The defendants argue that they repeatedly attempted to pay the policy limits, and in support, refer to four purported tenders, one before judgment and three after. At the outset, we hold that any purported tender before judgment is not relevant to this cross-appeal. The issue is whether the purported tenders after judgment were legally sufficient. The defendants contend that the post-judgment "tenders" occurred on November 28, 1983, January 31, 1984, and December 16, 1986.

The thrust of the pleadings filed November 28, 1983, was to strike part of the judgment order relating to costs. In that pleading the attorneys for Mizyed-Yassin, who are now the attorneys for the garnishees-defendants, stated that in March 1983 the policy limits were tendered to the plaintiff, that the tender had been rejected and that the tender remained open. The motion made no offer to pay interest.

On January 26, 1984, the defendants' attorneys filed a motion for direction and to interplead. That motion alleged, in part, that an offer

in settlement and/or satisfaction of judgment had been made on behalf of Mizyed-Yassin by its insurance carrier, the defendant, Zurich American Insurance Company, and that the offer was in the amount of the complete liability coverage carried by Mizyed-Yassin. The motion asked for an order denying the payment of interest on either of the judgments in light of the "tender" referred to. It also asked the court to allow the tender of the entire $300,000 policy limits with the clerk of the court "along with the costs in the sum as previously stated" and to declare that no interest on the judgments was due and owing by the defendant.

A hearing was conducted on that motion on January 31, 1984. The motion, it should be pointed out, requested other forms of relief. After colloquy between the court and various counsel on certain other aspects of the motion the following occurred:

"DEFENDANTS' ATTORNEY: There is a second part to that, Your Honor, if I may.

THE COURT: Yes.

DEFENDANTS' ATTORNEY: We take the position, and we are asking this court to rule on it, this court knows in open court we tendered every bit of money available in March of 1983. Now, we feel in that circumstance where the cast is holding a full tender, and *in this case it is a full tender in the exact amount, waives any interest. We are asking the court to hold there is not interest on this judgment or on the other judgment.* I have cited to the Court cases in the memorandum relative to costs on that issue.

THE COURT: Well, I have trouble following that, Counsel. I can't understand why you didn't make the payment right after the decision of the Jury.

DEFENDANTS' ATTORNEY: We have always tendered the money. We could have paid it the next day if he would have accepted it.

PLAINTIFF'S ATTORNEY: Your Honor, we take exception to that. We would have accepted payment at any time. We demand payment now, and we will take payment as of the moment the defendants are ready, willing and able to pay.

DEFENDANTS' ATTORNEY: We have been ready, willing and able to pay since March of 1983.

PLAINTIFF'S ATTORNEY: You have been ready, willing and able to pay $300,000 on the covenant not to sue the Mizyed-Yassin Corporation [and other defendants]. The court's verdict was substantially different than the covenant not to sue

that was offered. In any case, that has no relevance to the question of post-judgment interest, which is all we are discussing right now. I could only see a potential interest here. I could understand how a previous tender may—

THE COURT: Counsel, I have trouble following the post-judgment interest. You knew the amounts at that time. You could have come here if you had a problem. Any problem at all you could have asked the Court for help in getting the money on deposit. I don't think waiving [any] interest is proper in this case.

DEFENDANTS' ATTORNEY: Will the court so hold?

THE COURT: Yes.

DEFENDANTS' ATTORNEY: I would like it in the order—

* * *

DEFENDANTS' ATTORNEY: We are willing to do that together with the $456 or whatever the amount was that the court held on costs. *We are not willing to pay interest."* (Emphasis added.)

The order entered on February 4, after that hearing, made no reference to the court's oral finding that the plaintiff was entitled to post-judgment interest.

On December 15, 1986, the attorney for the defendants sent a letter to the attorney for the plaintiff after the appellate court opinion had been filed. That letter, in part, was as follows:

"You have undoubtedly had an opportunity to review the recent Opinion in this case. As you are aware, the Zurich Insurance Company has stood ready to pay its entire limits since March of 1983 to dispose of the matter. That remains their position."

Two days later, the attorney for the plaintiff responded by letter as follows:

"Your letter of December 15, 1986, is noted. The guardian *ad litem* for Esida [the plaintiff] is, of course, her mother and natural guardian, Sofia Yassin.

As you are aware, judgment interest at the rate at 9% per annum continues to accrue on the judgment entered on behalf of Esida from the date of judgment. We have not yet made a decision as to whether to pursue a petition for rehearing and/or petition for leave to appeal to the supreme court."

An examination of all that the defendants maintain were valid post-judgment tenders leads to the inescapable conclusion that the defendants were not offering, and would not offer, interest on the

judgment. In that respect, the tenders were ineffective, and the trial court correctly ruled that the defendants were obligated to pay interest from the date of the judgment. The defendants' position, we judge, is that the prejudgment offer to settle tolled all subsequent rights to interest. It did not. The defendants have not cited any case, nor do we believe one exists, holding that a prejudgment offer and a denial waive the right to post-judgment interest.

The defendants have cited two cases in support of their position that their post-judgment "tenders" were sufficient, *Casciola v. Gardner* (1981), 101 Ill. App. 3d 852, 428 N.E.2d 921, and *Needy v. Sparks* (1979), 74 Ill. App. 3d 914, 393 N.E.2d 1252. *Casciola* involved a judgment entered on August 3, 1979, and an opinion of the appellate court published on July 14, 1980. Between those dates the defendant's insurer on a number of occasions offered to pay the policy limit, costs and interest on the judgment and was rebuffed by the plaintiff. The appellate court held that, since the insurer had tendered everything it was required to do and had been refused by the plaintiff, a physical tender would have been futile and was not required. The court relied on *Needy v. Sparks*, the other case cited by the defendants, in which the facts were the same: a verbal offer to pay everything, including interest, followed by a written offer and a rejection. Neither case supports the defendants' position, and the judgment of the circuit court in favor of the plaintiff is affirmed.

■ We turn now to the plaintiff's appeal. The plaintiff contends that she was entitled to relief under the Insurance Code, the pertinent section of which provides as follows (Ill. Rev. Stat. 1985, ch. 73, par. 767):

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any of the following amounts ***."

She contends that the conduct of the defendants was "vexatious and unreasonable."

The defendants argue that this section is restricted to actions brought by the insured. The case law supports the defendants. (*Stamps v. Caldwell* (1971), 133 Ill. App. 2d 524, 273 N.E.2d 489; *Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027, 393 N.E.2d 718; *Robertson v. Travelers Insurance Co.* (1981), 100 Ill.

App. 3d 845, 427 N.E.2d 302, *rev'd on other grounds* (1983), 95 Ill. 2d 411, 448 N.E.2d 866.) The plaintiff maintains that those cases are distinguishable since none of them dealt with the issue of unreasonable and vexatious delay in paying a liquidated claim reduced to judgment. The plaintiff is incorrect. In *Stamps v. Caldwell* a minor plaintiff filed citation proceedings against an insurer to collect the amount of a default judgment against the insured defendant in a personal injury action. The plaintiff sought attorney fees under the Insurance Code. The appellate court affirmed the denial of relief under the Code on the ground that the statute does not extend to third parties such as the plaintiff. The specific claim made there was under this section of the statute and alleged vexatious refusal to pay.

The plaintiff refers to cases involving public policy pronouncements that liability insurance is not merely a private matter for the sole benefit of the carriers of the insured but also for the benefit of persons injured. Based on those cases, the plaintiff asks us to depart from the precedent of *Stamps v. Caldwell* and the other cases we have cited. We are not prepared to do so. In a case cited by the plaintiff, *Aabye v. Security-Connecticut Life Insurance Co.* (N.D. Ill. 1984), 586 F. Supp. 5, the district court held that a policy-assignee had standing to sue an insurer under this section. The district court, however, expressly distinguished *Scroggins v. Allstate Insurance Co.* by noting that *Scroggins* involved a third-party plaintiff, not an assignee. For these reasons, we hold that the trial judge correctly held that the plaintiff was not entitled to sanctions under the Insurance Code.

■ The plaintiff next argues that she was entitled to the statutory interest of 9% on judgments plus the statutory interest of 5%. The relevant statute is as follows (Ill. Rev. Stat. 1985, ch. 17, par. 6402):

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all monies after they become due on any bond, bill, promissory note, or other instrument of writing; *** and on money withheld by an unreasonable and vexatious delay of payment."

She argues first that the judgment was an instrument of writing and, second, that the money was withheld by an unreasonable and vexatious delay of payment. We agree with the defendants that the plaintiff is not entitled to interest under both this statute and the judgment statute. The only case remotely in point cited by the plaintiff is *People ex rel. Barclay v. West Chicago Park Commissioners* (1941), 308 Ill. App. 622, 32 N.E.2d 323. The opinion does not discuss the question before us, and we are unable to determine whether the plain-

tiff recovered under both statutes. We believe the trial court correctly ruled that the plaintiff was limited to recovery of interest only under the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1303), providing for interest on judgments.

■ The plaintiff's last contention is that the court should have granted sanctions under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611), which provides in substance that a party must certify through his attorney that, after reasonable inquiry, to the best of his knowledge and belief, any pleading is "well-grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." There is no dispute about the facts in this case, nor did the defendants make any argument for the modification or reversal of existing law. The issue, therefore, is whether the defendants, in moving to be excused from payment of post-judgment interest *after* all the appellate procedures had been exhausted, did so after reasonable inquiry and with a good-faith belief that their position was justified by existing law.

In order to make our ultimate decision clear on this question, it is necessary to discuss in detail not only what transpired in the trial court but what the defendants' argument in this court discloses.

When the trial judge made his ultimate ruling that is the subject of this appeal, he said that his "order" of January 1984 was *res judicata* on the question of post-judgment interest. The plaintiff had argued in her countermotion that the defendants were "estopped to reargue the issue of interest." The defendants' response said nothing about estoppel or *res judicata*. It also said nothing about whether the judge had in fact entered an order previously, and it said nothing about any lack of jurisdiction on the part of the trial judge in January 1984 after the notice of appeal had been filed.

In the hearing on the defendants' motion and the plaintiff's countermotion, the attorney for the defendants made reference to a loss of jurisdiction of the trial court by the notice of appeal in December 1983. He informed the judge that they had come before him after the notice of appeal was filed "as far as the satisfaction of judgment for [the plaintiff's mother] was concerned." That statement, as we will explain later, was not completely accurate.

The plaintiff's attorney, in partial response, said that the previous "order" was *res judicata*. The trial court referred to the previous proceedings and told the defendants' attorney that if they believed he was in error they should have appealed. He did not see "where the order [he] entered in January 1984 [was] not *res judicata*." The

defendants' attorney told the judge he had "absolutely no jurisdiction to enter that *order* in January." (Emphasis added.)

The defendants in their brief maintain that the trial judge erred in finding that his previous ruling in January 1984 was *res judicata* and posit three arguments, none of which was in their written response in the trial court and only one of which was orally argued: (1) the trial judge lacked jurisdiction to enter any order in January 1984, since the plaintiff had filed a notice of appeal in December 1983; (2) there was no "order" entered in January 1984, even though they characterized it as such in argument; and (3) any "order" of January 1985, even if valid, would not be *res judicata* as to them, the insurers, since the ruling of January 1984 was made before they were parties.

This last argument was improperly raised for the first time in their reply brief, which is restricted to the question of whether the trial judge properly found them liable for post-judgment interest. But we will address the question anyway. The defendants' argument is wrong, as the very case they cite illustrates. In *Earl v. Thompson* (1970), 128 Ill. App. 2d 32, 262 N.E.2d 320, the appellate court held that a judgment against an insured was not *res judicata* on a coverage question where the insured defended under a reservation of rights. The court added this pertinent language (*Earl v. Thompson*, 128 Ill. App. 2d at 37-38):

> "Plaintiff maintains, in effect, that the instant case provides an exception to the strict application of the doctrine. He argues that garnishee, as defendants' insurer, by assuming complete control of the defense in the former action, is estopped from claiming, or has waived, its defense of noncoverage. There is strong support for this proposition. In *Bourne v. Seal*, 53 Ill. App. 2d 155, 166, 203 N.E.2d 12, the case was decided on an exception to what the court recognized as the general rule of estoppel in insurance cases to the effect that:
>
> '*** an insurer, who assumes the defense of its insured, is later estopped from denying coverage or from raising any policy defense to the loss resulting from an adverse judgment.' "

The defendants here never questioned coverage at any time, and they took complete control of the defense.

■ In response to a question by this court during oral argument, the attorney for the defendants said that they were withdrawing the argument that the trial court lacked jurisdiction to enter an order in January 1984. He conceded that the matter before the trial court was "collateral" to the case on appeal. But the fact remains that the

defendants argued in their brief an alleged lack of jurisdiction and, most important, they argued before the trial judge in 1987 that he lacked jurisdiction in 1984, a now admittedly baseless argument. Even in the absence of the defendants' concession, we would have held this to be an argument lacking any substance. *Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 423 N.E.2d 1170; *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 419 N.E.2d 598.

We cannot help wondering when this argument first seemed tenable to the defendants. For if they believed in January 1984, when they filed their motion, that the court lacked jurisdiction, the motion and their arguments in support were an exercise in legal mummery. In other words, they would have been asking the judge to do something which they believed he had no power to do.

■ The defendants' last contention is that no "order" was entered in January 1984 providing that they were required to pay postjudgment interest. We agree.

We emphasize now, and will discuss again later, that it was the defendants who asked the court for relief on January 1984 after the notice of appeal had been filed. That motion alleged that *two judgments* had been entered and that an offer of settlement was being made which would protect the defendant for the "claims" presented. The prayer of the motion asked that an order be entered denying "payment of interest on either of said *judgments*" and for a declaration "that no interest on said *judgments* is due and owing." (Emphasis added.) At the hearing, the defendants' attorney asked the judge to hold that there was no interest due on either of the judgments. When the judge expressed his view that waiving interest was not proper, the defendants' attorney told the judge he wanted that holding in the order.

At this point we refer to the brief filed in this court in which the defendants state the following:

> "Though the Court did on occasion throughout the hearing of January 31, 1984, discuss the judgment in favor of Esida Yassin, it was never discussed as an issue to be ruled upon. *** Any discussion by the trial court and counsel at that hearing concerning Esida Yassin's judgment was purely advisory."

The record, of course, consisting of the motion itself and remarks of counsel, clearly shows that those statements in the brief are not true.

For reasons, however, apparently known only to the defendants, they did not have the trial court's ruling of January 31, 1984, made part of the written order which was entered on February 4, 1984. That order, which was prepared by the attorney for the plaintiff, pro-

vided that the defendants were to tender $8,661 to the plaintiff's mother in satisfaction of her judgment. Typed in the order, but with a line drawn through it, is the sentence, "The motion of the defendant, Mizyed Yassin Corporation for direction and interpleader is denied." Two handwritten additions appear in the order, one finding that there were no valid liens and the other that payment of the judgment did not create any impermissible preferences between the various claimants. Those handwritten parts of the order were based on other prayers of the defendants' motion. It seems apparent that those handwritten portions were included at the insistence of the defendants and that the failure to include the court's ruling on post-judgment interest in the written order was not inadvertent.

Nonetheless, the fact remains that the written order makes no mention of the obligation to pay post-judgment interest; and that written order controls regardless of what the judge may have said at the hearing. (*People ex rel. Person v. Miller* (1977), 56 Ill. App. 3d 450, 371 N.E.2d 1012; *Ahn Brothers, Inc. v. Buttitta* (1986), 143 Ill. App. 3d 688, 493 N.E.2d 384.) We hold, therefore, that the oral pronouncement made by the judge in January 1984 was not *res judicata* on the question of whether the defendants were obligated to pay post-judgment interest.

■ But that is not the end of the matter. If the order of January 31 were *res judicata*, the plaintiff's position here would be stronger, but the absence of such effect is not fatal to the plaintiff's claim that the defendants acted contrary to section 2—611. We repeat that it was the defendants who put the matter in issue in January 1984. To give them the best of it and to characterize their pleading and statements as a request for direction, the fact is that they got it and ignored it insofar as this judgment was concerned. The judge made his position clear: Their argument that a prejudgment offer excused them from paying post-judgment interest was wrong. He placed them on notice in January 1984 as to his position. We have determined now that he was correct at that time, and we have determined that there is no authority for the position taken by the defendants that a prejudgment offer excuses the payment of post-judgment interest and there is no authority excusing the obligation for post-judgment interest in the absence of a tender which includes the interest from the date of the judgment until the date of the tender. Though not conclusive, the defendants' failure to submit any authority supporting their initial claim that a prejudgment offer excused a proper post-judgment tender militates strongly in favor of the plaintiff.

There are other facts that support the plaintiff's position. The

plaintiff's countermotion alleged that before the garnishment action was filed the attorney for the plaintiff had a conversation with the attorney for the defendant, who said the following, in substance:

"There will be no need to file a garnishment. I will instruct the carrier today to prepare a draft to pay the balance remaining of insurance which is $292,000 *plus interest at 9% on $300,000 from the date of judgment* plus court costs in the amount of $456.80. Give me a letter stating the dollar amounts involved and I will get a draft to you as quickly as possible." (Emphasis added.)

The countermotion alleged that, pursuant to that representation, the plaintiff's attorney prepared and hand delivered a letter that same day with the computations requested by the attorney for the defendants. That letter recited that "pursuant to our telephone conversation this date, the following are our figures for satisfaction of the outstanding judgment against Mizyed-Yassin Corporation." The figures included $93,871 interest from the date of the judgment up to the date of the letter. The countermotion further alleged that instead of delivering the insurance company draft, the attorney for the defendants served the plaintiff's counsel on May 4, 1987, with the motion to tender judgment which was filed with the court on May 13, 1987. Those allegations were never denied by the defendants in any pleading or in any statement to the court.

The plaintiff referred to the alleged conversation in her brief, and the defendants responded that the "reference was unsupported by the record, purely self-serving and inaccurate." Once again we must take issue with assertions in the defendants' brief. The reference *is* supported by the record, and the conversation would be admissible. The defendants never answered those allegations. Consequently, they should have been taken as true. And if true, the question arises: What legal justification was there to support the change in the defendants' position?

We note also that the defendants did pay post-judgment interest to the plaintiff's mother in satisfaction of her claim shortly after the judge ruled in January 1984. Another question arises: Why tender post-judgment interest in one case and not the other?

Finally, there is one fact known to us which was not known to the trial court, and that is the awareness on the part of the defendants that, at the time they made their "tender" to the plaintiff, she could not accept it. They admit in their brief that, if the plaintiff accepted their tender, her appeal on the inadequacy of the verdict would be moot. We find it difficult to reconcile an allegation that a tender was

made knowing it could not be accepted with another allegation that the tender was made in good faith.

We are not unmindful that a trial judge has discretion in passing on motions brought pursuant to section 2—611 and his decision will not be disturbed on review absent a clear abuse of discretion. (*Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 478 N.E.2d 1132.) That discretion, however, is not unlimited. See *Chavez v. Watts* (1987), 161 Ill. App. 3d 664, 515 N.E.2d 146.

The defendants filed a response to the plaintiff's pleading and cited, for the first time, *Casciola v. Gardner*, decided in 1981, and *Needy v. Sparks*, decided in 1979, both previously discussed. In response to the judge's remark that the defendants were asking him to overrule himself, the attorney for the defendants said that the judge did not have before him, in 1984, the authorities that he was now citing. (He also told the judge at that time that he had lost jurisdiction in 1984.) The following comments represent the only basis for the trial judge's denial of the countermotion:

"On the other hand, counsel, as far as your post-trial motions and so forth, I don't think it's coming back to court now is vexatious. He had those authorities. I didn't have them at that time and I heard the matter and I think it's *res judicata* in this case and that will stand."

We construe the judge's remarks to mean that he thought the cases cited by the defendants, *Casciola v. Gardner* and *Needy v. Sparks*, supported the defendants' position but that he was powerless to change his previous order. *Casciola v. Gardner* and *Needy v. Sparks* are, as we have previously explained, not authority for the defendants' position, and the judge erred in holding that they were. Discretion exercised on an erroneous interpretation of the law is subject to keener scrutiny by a reviewing court. (*Cf. Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 383 N.E.2d 1379.) It is fairly arguable that the judge could well have ruled in favor of the plaintiff if he had been convinced that the cases belatedly cited by the defendants were not in point.

The defendants also contend that the plaintiff's countermotion pursuant to paragraph 2—611 was defective in that it failed to specifically state what statements or pleadings were false and to specify what fees resulted from such false statements or pleadings. In support of their argument, the defendants cite *Brandel Realty Co. v. Olson* (1987), 159 Ill. App. 3d 230, 512 N.E.2d 85. The difference between this case and *Brandel Realty* is that the respondent in *Brandel Realty* filed a motion to strike and dismiss the petitioner's motion be-

cause it failed to contain the necessary allegations. No such motion was made in this case nor was any allegation that the motion was insufficient ever argued in the trial court. The question of the sufficiency of the countermotion, therefore, has been waived. Moreover, we believe that the allegations of the countermotion were sufficient to apprise the defendants that the claim that they had made valid tenders was alleged to be frivolous.

We repeat and emphasize that this case does not involve an allegation of fact but rather an argument of law. We are reluctant to make an independent judgment that an attorney did not act in good faith in arguing a point of law, and we will not do so without giving the defendants' attorneys an opportunity to answer the questions that have been raised. We do judge, however, that a reexamination of this issue in the trial court is justified. Consequently, we reverse the judgment in favor of the defendants on the plaintiff's countermotion for relief under section 2—611 and remand for a new hearing to determine whether the defendants' assertion that they had made proper tenders was made after reasonable inquiry with a reasonable belief that their arguments were supported by existing law to the best of their knowledge and belief. In all other respects the judgment of the circuit court is affirmed.

Judgment affirmed in part and reversed and remanded in part.

BILANDIC and SCARIANO, JJ., concur.