*In re* J.O., a Minor (The People of the State of Illinois, Petitioner-Appellant, v. J.O., a Minor, Respondent-Appellee).

First District (6th Division)   No. 1—93—0613

Opinion filed January 20, 1995, *nunc pro tunc* November 23, 1994.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Elizabeth Scholz, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

The State appeals from an order denying its motion to transfer the respondent, J.O., from juvenile court to criminal court to be tried as an adult for attempted first degree murder and aggravated battery.

At the transfer hearing, evidence of the crime was introduced through the written statement of the codefendant, Jose Hernandez. This statement revealed that J.O., Jose Hernandez and two other Latin Kings were riding around in a stolen car on September 22, 1992. They planned to cruise around in order to find a "guy in the wheelchair," Maricelino Morales, who had been shot by a fellow gang member. Morales, who was formerly a member of a rival gang and was paralyzed from the waist down, intended to testify against the shooter. Hernandez stated that "they wanted to find the wheelchair guy and beat him so he wouldn't be able to testify against their fellow Latin King."

The group did locate Morales at a gas station on 28th Street. Morales was with Dawn Elliot and Ramone Macias, "the guy who pushed him." Two of the Latin Kings jumped out of the car, one with a golf club and the other with a baseball bat. Diablo, one of the Latin Kings, rammed the car into the wheelchair, knocking Morales out onto the street. Two of the Latin Kings beat Morales with the club and bat. As a result of this beating, Morales received serious injuries to both hands with one finger severed at the knuckle and multiple lacerations to the skull that required surgery. The defendant did not participate in this beating of Morales, but chased Morales' companion, a 2-6 gang member, down the street, hitting him with a baseball bat. After the beating, J.O. and the other three Latin Kings left. The car was later burned with the golf club and baseball bats inside.

Hernandez was not arrested until approximately two weeks after the beating when he came to juvenile court to testify for one of his co-offenders and was identified by Morales. A police officer testified that two witnesses identified J.O. in a lineup investigating the beating. Morales' companion, Marcias, told the officer that J.O. exited the car at the time of the beating and chased him and struck him with a baseball bat.

Andrew LeFevour, the assistant State's Attorney who took Jose Hernandez' statement, Officer Eugene Schleder, who investigated the beating of the victim and conducted the lineup, and Melvin Travis, probation officer for the juvenile division of the circuit court of Cook County, testified. The trial judge, after considering the statutory factors for transfer, held that J.O. should stay in the juvenile system, thus denying the State's motion to transfer J.O. to the adult criminal system.

"The role of the appellate court in determining the propriety of a juvenile transfer to criminal court is whether, in light of the statutory criteria, the trial judge abused his discretion." (*People v. Thomas* (1981), 94 Ill. App. 3d 895, 902, 419 N.E.2d 480, 486.) Our review of

the record indicates that the trial judge did consider these factors. However, "[n]ot all of the factors set forth in the transfer statute need be resolved against the juvenile to justify transfer." (*People v. Kraman* (1981), 96 Ill. App. 3d 390, 404, 421 N.E.2d 346, 357.) We hold that the trial judge abused his discretion by denying the motion to transfer.

In making its determination whether to transfer prosecution from the juvenile court to prosecution under the criminal laws, the court is to consider six factors. These factors are:

> (1) Whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority; and (7) whether the minor possessed a deadly weapon when committing the alleged offense.

Ill. Rev. Stat. 1991, ch. 37, par. 805—4(3)(b); 705 ILCS 405/5—4(3)(b) (West 1992).

First, the judge ruled that a grand jury would absolutely indict J.O. We agree that an indictment for at least aggravated battery is more than likely. Second, the trial judge ruled that the beating was "absolutely" committed in an aggressive and premeditated manner. We again agree. The record indicates that J.O. and his fellow gang members cruised around until they found Morales in his wheelchair with the intention of beating him with a golf club and baseball bats. Third, J.O. was almost 17 years old. Had the victim died of the beating, J.O. could have been charged with first degree murder, which by statute would automatically send him to the adult criminal system. See Ill. Rev. Stat. 1991, ch. 37, par. 805—4(6)(a); 705 ILCS 405/5—4(6)(a) (West 1992).

Fourth, J.O. had a previous history of trouble with the police. The judge, although not finding J.O. delinquent, noted that J.O. had three pending petitions in juvenile court. J.O.'s previous police and court contacts include 20 station adjustments and 8 court referrals. Eight prior station adjustments and probation for burglary were enough in *People v. M.D.* (1984), 101 Ill. 2d 73, 86, 461 N.E.2d 367, 374, to convince the court that "the respondent is very familiar with the criminal justice system." "Station adjustments have been held to be 'probative and relevant because they enable the trial court to

determine the proper disposition.' " *M.D.*, 101 Ill. 2d at 79, quoting *In re McClinton* (1978), 63 Ill. App. 3d 956, 959.

The fifth factor to be considered is whether there are facilities particularly available to the juvenile division of the circuit court for the treatment and rehabilitation of the minor. The probation officer, Mr. Travis, testified at the transfer hearing that "[t]he only special need that I saw for this minor [J.O.], would be a need for schooling, since he's not been in school for a number of years." Mr. Travis' report additionally stated that "facilities that are available through the Department of Corrections would be available both on the adult and juvenile level for this minor if convicted of the offense." School attendance is mandatory in juvenile facilities only until the age of 16. Additionally, a juvenile may not participate in any of the vocational programs until completing a GED at the juvenile facility. School attendance is optional in the adult system, but an inmate may make money for commissary expenses by having a job or attending school.

J.O.'s probation officer also testified that J.O. would benefit if his gang affiliation was severed. Both a juvenile and adult facility would remove J.O. from the gang influence in his neighborhood. No evidence is available in the record comparing gang activity in an adult facility with that in a juvenile facility. Regardless of which system J.O. is tried under, he would remain at the juvenile Department of Corrections until his majority. Thus, J.O. would have any advantages of a juvenile detention facility until the age of 21 regardless of whether he is adjudicated a juvenile or an adult.

Additionally, J.O.'s probation officer stated that J.O. could benefit from counseling. Counseling is available at either facility to assist with adjustment to confinement. The only testimony concerning the reason he actually needed counseling was in reference to "his relationship with other individuals in his classroom." No testimony was offered in this case by a psychologist or psychiatrist recommending regular personal counseling.

Mr. Travis was specifically asked if he had a recommendation about J.O.'s placement. Mr. Travis replied that he "did not make a recommendation in the social investigation." He stated that he did not make a recommendation because he did not have access to complete police reports, because he conducted his social investigation from information obtained only from the family, and because he did not know the intricacies of the case. The judge at this point in the proceedings repeated that "[h]e's [Mr. Travis] not making a recommendation." However, when the judge was making his conclusions at the end of the transfer hearing, he stated that "the probation officer

recommend[ed] that he does not go to the adult system." When corrected by the assistant State's Attorney, the trial judge first insisted that the probation officer had made that recommendation, and after being corrected again, the trial judge stated that he did not think the facilities were the same. "Discretion exercised on an erroneous interpretation of the law is subject to keener scrutiny by a reviewing court." (*Cf. Yassin v. Certified Grocers of Illinois, Inc.* (1988), 178 Ill. App. 3d 498, 511, 533 N.E.2d 495, 503.) We conclude that the same would be true of discretion exercised on an erroneous interpretation of fact. The judge misinterpreted the probation officer's testimony.

The sixth statutory factor to consider is whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. The trial judge ruled that "[t]he security of the public would best be served if he [J.O.] was locked up and they threw away the key." We do not disagree with the judge's conclusion that the public would be better served if J.O. were incarcerated. The testimony reveals that J.O. will be housed in a juvenile facility at least until his majority no matter in which system he were to be sentenced. Convicted as an adult, J.O. would face a minimum of six years and a maximum of 30 years. The record is silent as to the sentence if convicted in the juvenile system. "[A]dequate balancing calls for consideration of which penalty would best serve both of the interests at stake." (*People v. Beck* (1989), 190 Ill. App. 3d 748, 761, 546 N.E.2d 1127, 1135.) J.O. was sent away on different occasions by his family in order to remove him from the gang influence in his neighborhood. He was sent to live with an aunt in Mexico at one time and with a brother in California in another. Each time, he returned to become reaffiliated with the gang—not really ever leaving the gang, only taking extended furloughs from the gang. It was the gang affiliation that caused him to go "cruising," looking for a paraplegic in a wheelchair to beat with golf clubs and baseball bats, in order to obstruct justice—to keep the victim from testifying in a court of law. Additionally, J.O. has a long history of station adjustments and court referrals.

Finally, J.O. did possess a deadly weapon when committing the offense. Reasonable people know that a beating with a golf club and baseball bats can cause death and/or great bodily injury. Indeed, Maricelino Morales suffered a severed finger and multiple head lacerations from a golf club and baseball bats.

Normally, if a juvenile judge considers each of the "statutory factors and any other relevant matters, his decision is 'a product of sound judicial discretion which will not be disturbed on review.'"

(*People v. D.B.* (1990), 202 Ill. App. 3d 194, 200, 559 N.E.2d 873, 877, quoting *People v. Clark* (1987), 119 Ill. 2d 1, 14, 518 N.E.2d 138, 144.) However, as stated above, discretion exercised on an erroneous interpretation of fact is subject to keener scrutiny by a reviewing court. In view of all the evidence presented in relation to each of the six factors the trial judge was to consider to determine whether J.O. should be transferred to the criminal court for prosecution as an adult, we believe the trial judge abused his discretion in denying the State's motion to transfer.

The defense characterizes this case as similar to the case of *People v. D.B.* (1990), 202 Ill. App. 3d 194, 559 N.E.2d 873, in which the appellate court upheld the trial judge's denial of the minor's transfer to criminal court. In *D.B.*, the minor respondent was only 14 years old, was guilty only of burglary and took *no* part in the beating and death of the elderly victim, and had only one previous court referral and one station adjustment. Additionally, D.B. turned himself in to the police after finding out that the victim had died, thus evidencing remorse. D.B.'s teacher reported that D.B. was "neither violent nor ever a problem to other students" but was "hanging around a group of bad friends." (*D.B.*, 202 Ill. App. 3d at 198.) The probation officer testified that nothing in the gruesome details of the murder in that case would "persuade him to alter his conclusion in his report that respondent 'was in the wrong place at the wrong time' or to change his recommendation not to prosecute respondent under the criminal laws." *D.B.*, 202 Ill. App. 3d at 198-99.

We find *D.B.* to be factually distinguishable. More in point is *People v. M.D.* (1984), 101 Ill. 2d 73, 461 N.E.2d 367, in which the supreme court reversed a trial court order denying the State's motion to transfer and an appellate court's affirmance of that order.

The judgment of the circuit court is reversed.

Judgment reversed.

RAKOWSKI and ZWICK, JJ., concur.